**David J. PODEDWORNY, Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services of the United States, Appellee.**

**No. 83–1680.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) April 23, 1984.

Decided Sept. 28, 1984.

As Amended Oct. 4 & 5, 1984.

Dianne Upson, Legal Aid of Chester County, Inc., West Chester, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., James G. Sheehan, Asst. U.S. Atty., E.D. Pa., Beverly Dennis, III, Regional Atty., Michael P. Meehan, Asst. Regional Atty., Dept. of Health and Human Services, Philadelphia, Pa., for appellee.

Before ADAMS and BECKER, Circuit Judges, and SAROKIN, District Judge.*

**OPINION OF THE COURT**

BECKER, Circuit Judge.

This is a Social Security disability case in which we are called upon to review the manner in which the Secretary of Health and Human Services has applied the medical-vocational guidelines or "grids" to deny disability insurance benefits to appellant David J. Podedworny. This is the second time this case has been before this court, and appellant's application for benefits has now been pending for five and one-half years. He is a 57 year-old man with a ninth grade education who suffers from advanced cardiovascular disease and who has never performed any work but that of a crane operator in a steel mill. The Secretary found him not disabled under the grids because of her conclusion that he possessed transferable skills. As will appear, the Secretary's decision is not supported by substantial evidence for a number of reasons. First, the ALJ failed to give sufficient weight to testimony offered by appellant and his personal physicians about the pain suffered by appellant. Second, the ALJ's conclusion that appellant retained the capacity to engage in certain sedentary labor was based on an improper hypothetical question that was posed to the vocational expert. Finally, the ALJ's finding that appellant had transferable skills was unsupported because the ALJ failed to identify specific transferable skills and the jobs to which those skills could be transferred. Each of these errors would require a remand to the Secretary for reconsideration. However, when these matters are considered together, and in light of the evidence developed in two hearings before the ALJ, it appears highly unlikely that the Secretary could, after a third proceeding, develop a record that would support a finding that the appellant is not disabled. Because there appears to be no value to a remand for further administrative proceed-

ings in this case and because appellant has already waited so long for a proper determination of his disability, we have decided to reverse the judgment of the district court and remand with a direction for an award of benefits.

**I.**

Appellant first applied for disability insurance benefits on January 23, 1979, alleging disability as of May 1, 1978, due to angina, hypertension, and gastritis. The application was denied throughout the proceedings before the Secretary and the district court, but this court found the ALJ's conclusions concerning appellant's disability unsubstantiated by the evidence and remanded the case to the district court for further remand to the Secretary. *Podedworny v. Harris*, 672 F.2d 904 (3d Cir. 1981). Appellant's case returned to the ALJ who, after conducting another hearing, recommended in a decision dated April 5, 1982, that appellant be denied benefits. After this decision was affirmed by the Appeals Council, appellant again sought review in the district court. On July 14, 1983, that court granted summary judgment for the Secretary, finding the Secretary's conclusion supported by substantial evidence. Appellant now seeks review of that judgment.

The evidence adduced before the ALJ reflects that appellant spent his entire work life, from 1946 until his illness in May, 1978, as a crane operator at Lukens Steel Company in Coatesville, Pennsylvania. Appellant's job was to operate a crane from a stationary cabin some ninety feet above the floor of the mill, using two hand controls and one foot control to move large quantities of scrap metal into a furnace. He attended school only through the ninth grade. Appellant left his job after he began to experience dizziness and blurred vision as the result of various conditions described below. The company's doctors

* Honorable H. Lee Sarokin, United States District Judge for the District of New Jersey, sitting by designation.

agreed that he could not safely perform the job of crane operator.

Appellant's condition has deteriorated further since 1978. He now complains of prolonged dizziness and headaches, chest pains, double vision, and shortness of breath and fatigue after only minimal exertion. At the time of the first hearing, appellant placed the frequency of his chest pain at four times a day to three times an hour; the pain was accompanied by sweating and relieved only by nitroglycerine. Appellant also experienced double vision six to eight times a day for periods of two to three minutes. The dizzy spells, sometimes accompanied by double vision, occurred five to six times a day, and lasted for three to four minutes. At the time of the second hearing, appellant testified that his symptoms were worse: his dizziness was constant, his chest pain often lasted for hours, and he was forced to take as many as ten nitroglycerine pills in one day. Appellant testified that he experienced shortness of breath after walking seventy-five to one hundred feet, and that he even had to take a break after climbing the set of four, then five steps in his two-level house.

Dr. Thomas C. Michaelson, appellant's treating physician since 1978, has examined appellant regularly and has diagnosed him as suffering from "dizziness, hypertension, epistaxis, and chest pain, the chest pain being associated with diaphoresis, pain radiating to his left arm, positional dizziness and occasional double vision, diabetes, hypertriglyceridemia, gastritis and significant obstructive lung disease." In a February 8, 1982, letter concerning appellant, Dr. Michaelson stated:

> As you know, I had strongly recommended that he is eligible for full disability and since his original heart attack

some years ago, Mr. Podedworny has been removed from his job and has been rather sedentary. At this level, however, he has symptoms consistent with his coronary artery disease, that is a walk up a couple of flights of steps, walk down a block, gives him a considerable dyspnea and chest pain and lightheadedness. In the cold weather, it's been rather more severe and he has not really been able to get out and even cross the street to get a paper and/or his meal without significant symptoms. These symptoms are consistent with the diagnosis of a coronary artery disease and hypertension. I therefore feel he cannot be gainfully employed because he would even have trouble getting to and from work and in the wintertime, that activity would endanger his life. Again, I strongly recommend full disability for him on the basis of his coronary artery disease.

Appellant was also examined by two physicians to whom he was referred to Pennsylvania's Bureau of Vocational Rehabilitation. Those examinations, conducted by Dr. Martin Mersky in May, 1979, and by Dr. Richard Greenwood in November, 1981, essentially confirmed the findings made by Dr. Michaelson. Dr. Mersky's prognosis for appellant was "poor." He stated:

> The patient's history is compatible with significant coronary artery obstructive disease and a high risk for myocardial infarction. A trial of aggressive medical therapy with nitrates for the angina is indicated. (Inderal if [sic] contraindicated due to the patient's history of wheezing and chronic obstructive lung disease.) Even if the patient's symptoms are relieved after an active trial of anti-angina medical therapy, it would be too hazardous to allow the patient to do any of even mild physical labor due to the poor prognosis, as mentioned above.[1]

---

1. In his Physical Capacities Evaluation, Dr. Mersky stated that appellant could sit for four hours during an eight hour work day but could not stand or walk at all; that he could occasionally lift up to ten pounds, but never any weight greater than ten pounds; that he could do simple grasping and fine manipulation with his right and left hands, but no pulling or pushing; that he could operate foot controls with both feet; that he could never bend, squat, crawl, or climb and could occasionally reach above his shoulder level; and that his restrictions were total with respect to unprotected heights, being around moving machinery, driving automotive equipment, exposure to marked changes in

The Secretary placed prime reliance on the testimony of Dr. Edward E. Holloway, a "medical adviser." [2] Dr. Holloway did not examine appellant. Based upon a review of the medical reports, he agreed with Dr. Michaelson's diagnosis that appellant suffered from coronary artery disease, pulmonary function disturbance, uncontrolled diabetes mellitus, peripheral vascular disease with intermittent caudication and labile hypertensive state, and he agreed that these conditions, particularly the diabetes, could cause dizziness and intermittent blurring of vision. Dr. Holloway testified, however, that appellant's medical conditions did not individually or in combination meet the Secretary's Listings of Impairments, 20 C.F.R. § 404, Subpart P, Appendix 1. He further testified, with respect to Mr. Podedworny's residual functional capacity, that there was no limitation with regard to sitting or walking; he could stand four hours with some motion; he should not lift over 15 to 20 pounds occasionally but could lift 5 to 10 pounds routinely; he could not climb; he could use his hands and feet for repetitive movements; he had limitations with regard to crawling, squatting, bending, and reaching; he should not be at unprotected heights or around moving machinery; he should not drive for long distances; and he should not be exposed to marked changes in temperature and humidity or to dust, fumes, and gas.

Finally the ALJ called upon Dr. Thomas Gannoway, a vocational expert.[3] Dr. Gannoway defined Mr. Podedworny's employment as a crane operator as being skilled, light work in the equipment operating field. He noted that the "aptitudes" required for the job are spacial perception, form perception, and motor coordination. Dr. Gannoway was then asked three hypothetical questions by the ALJ. For the first hypothetical, Gannoway was asked whether ap-

pellant was able to work at his former job assuming that he had all the limitations, restrictions, and pain that were alleged in the oral and documentary record. The Vocational Expert responded that, on those assumptions, appellant could not return to his former job.

In addition to assuming the same facts as the first, the second hypothetical considered appellant's age, education, and work history, and inquired whether "the work functions which he demonstrated in his previous work [could] be applied to meet the requirements of work functions of other kinds of work." Dr. Gannoway replied, "There are many transferable skills, but taken into the aggregate of the limitations and the pain to which he has testified, he could not."

The third hypothetical question assumed that appellant had:

> a history of treatment for a variety of impairments ... that he is able to sit, walk, stand for about four hours with moving around, that he could lift, at the most, about 20 pounds, that he could use his hands for grasping, pushing, and pulling, and fine manipulation, and that he can use his feet for repetitive movements. That he has total restriction as to climbing, limited restriction as to squatting, bending and crawling, and that he can reach, but not too far, in other words, he can't over-extend himself. That he has full use of his upper and lower extremities.

The ALJ then asked, "Assuming that I find these facts and considering his age, his education, and work history, can the work functions which he demonstrated in his previous work be applied to meet the requirements of work functions of other kinds of work?" Dr. Gannoway responded, "Yes, they can." He then described how Mr.

---

temperature and humidity, and exposure to dust, fumes and gases.

**2.** The Secretary may appoint such an adviser pursuant to 20 C.F.R. § 404.1526(b) to evaluate the severity of a claimant's impairment.

**3.** Under 20 C.F.R. § 404.1566(e), such experts may offer their views to the ALJ concerning the existence of specific jobs for which a claimant would qualify, given his or her impairment, and the transferability of skills from a claimant's previous job to a future job.

Podedworny would be able to transfer "occupationally significant skills" to "a number of other jobs." These "skills" were defined as the "ability to use his hands and feet dexterously, knowledge of tools and equipment, and general mechanical knowledge."

The expert divided the job categories that he thought appellant could perform into the "handling category" and the "manipulating category." He testified that jobs in the handling category which Mr. Podedworny could perform included component mounter, capacitor assembler, and box coverer. These are all routine, non-machine tasks involving little or no latitude for judgment, but call for "an inclination for routine, repetitive activities with some dexterity of the fingers, hands, eye-hand coordination, form perception and the ability and willingness to follow instructions." The expert then testified that jobs in the manipulating category of work included a bench worker assembling scientific equipment, an assembler of light electrical equipment, and a module assembler of electric goods. Dr. Gannoway testified that mastery of all these jobs would require only brief, on-the-job training.

In his decision the ALJ agreed that appellant is not able to engage in his prior work due to his inability to climb many steps, his dizzy spells, and his blurred vision. He concluded, however, that appellant was not disabled, essentially because: (1) appellant's complaints of severe and constant pain were not substantiated by the record; (2) appellant retains the capacity to engage in a variety of sedentary exertional activities despite certain "non-exertional impairments"; and (3) appellant's work as a crane operator was skilled, and certain skills he developed are transferable to meet the requirements of certain sedentary jobs, i.e., capacitor assembler, component mounter, and box coverer.

During both appellant's original hearing and on remand, the ALJ arrived at his conclusion by applying the evaluation procedure required by 20 C.F.R. § 404.1520.

4. A claimant is automatically deemed disabled

After finding that appellant was not working, the ALJ considered whether appellant's impairment met or equalled an impairment listed in the Secretary's Listing of Impairments, 20 C.F.R. § 404, Subpart P, Appendix 1.[4] After finding appellant's impairments were not included in that list, the ALJ considered whether appellant could continue the type of work he had performed in the past. After concluding that appellant could not continue that type of work, the ALJ examined the four essential factors set out in 20 C.F.R. § 404.1505: appellant's residual functional capacity, age, education, and past work experience. He then turned to the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2. The guidelines are a matrix combining various permutations of the four essential factors noted above. *See Santise v. Schweiker*, 676 F.2d 925, 927–28 (3d Cir. 1982). Once the ALJ has determined as a matter of fact into which category a claimant's age, education, work experience, and residual functional capacity fit, the guidelines *direct* a conclusion concerning a claimant's disability. 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.00(a).

That portion of the guidelines applicable to Mr. Podedworny is as follows:

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| *** | *** | *** | *** | *** |
| 201.10 | Closely approaching advanced age | Limited or less | Skilled or semi-skilled— skills not transferable | Disabled |
| 201.11 | " | " | Skilled or semi-skilled; skills transferable | Not Disabled |

In view of his findings of fact, the ALJ applied Rule 201.11, which dictated the conclusion that appellant was not disabled. Because this case was decided on the grids, the Secretary concedes that, if appellant has no transferable skills, Rule 201.10 would apply and appellant would be declared disabled.

if his or her disability is included in the list.

## II.

■ This court may reverse a grant of summary judgment for the Secretary only if we conclude that her findings are not supported by substantial evidence. We have defined substantial evidence as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981).

Disability determination proceedings before an ALJ involve shifting burdens of proof. The claimant bears the initial burden of proving that he or she is disabled. The claimant satisfies this burden by showing that he or she cannot return to his or her customary occupation. Once this burden is met, the burden shifts to the Secretary, who must prove that the claimant can still engage in substantial gainful activity. The Secretary satisfies this burden by showing that given claimant's age, education, and work experience, he or she can still perform specific jobs that exist in the national economy. *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979). Since the ALJ found that appellant was unable to return to his previous work as a crane operator, the burden then shifted to the Secretary to show that appellant is able, given his health, age, education, and experience, to perform jobs that exist in the national economy. *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983). The ALJ's conclusion that appellant was not disabled depends principally on the three critical findings identified above. We now analyze these findings against the appropriate legal background.

### A.

■ We take up first the ALJ's finding that appellant had the residual functional capacity to perform sedentary work. The validity of this finding depends upon whether the ALJ was justified in rejecting: (1) the testimony of appellant as to his disability and pain; and (2) the medical evidence given by Drs. Michaelson and Mersky as to appellant's pain and disability. 642 F.2d 700, 704 (3d Cir.1981). We believe that this is especially true when the

opinion reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. *See Mitchell v. Schweiker,* 699 F.2d 185, 187 (4th Cir.1983). We have also declared that testimony of subjective pain and inability to perform light work should be accorded great weight, especially when it is supported by competent medical evidence. *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). In the instant case, the appellant's testimony about the pain he was experiencing is entitled to even more substantial weight because it is unlikely that absent such pain he would have quit a job at which he was working for about thirty-two years. *See Taybron v. Harris,* 667 F.2d 412, 415 n. 6 (3d Cir.1981) (per curiam) ("when the claimant has worked for a long period of time, his testimony about his work capabilities should be afforded substantial credibility."). All of these precepts were disregarded in this case.

■ Dr. Michaelson, appellant's personal physician since 1978, stated through several exhibits that appellant suffered from coronary artery disease and hypertension which caused labored breathing, chest pain, and dizziness after only slight exertion, such as walking down the block or climbing a flight of stairs, and that even travel to work could endanger his life. Dr. Mersky was in agreement, opining that the prognosis for appellant's coronary artery disease was so poor that it would be too hazardous to allow him to perform even mild labor. The ALJ did not accord significant weight to these opinions, but instead placed the greatest emphasis upon the report of the consultant, Dr. Holloway, even though Dr. Holloway never examined Mr. Podedworny. The ALJ's reliance on this report must be considered in light of this court's conclusion that the opinion of a doctor who has never examined a patient "have less probative force as a general matter, than they would have had if [the doctor] had treated or examined him." *Wier ex rel. Wier v. Heckler,* 734 F.2d 955, 963 (3d Cir.1984).

In spite of the strength of the conclusions of both Dr. Michaelson and Dr. Mer-

sky and their corroboration of appellant's complaints of pain, the ALJ failed to accord significant weight to this testimony. Thus the Secretary's conclusion that appellant possesses the residual capacity to perform sedentary light work offends the standards enumerated in *Dobrowolsky* and *Wier*. Moreover, the ALJ failed to explain, under the standards this court declared in *Cotter*, why he rejected this evidence. Such errors at least would necessitate a remand to the Secretary for a more thorough consideration of this pertinent evidence.

### B.

Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy. While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments. *Tennant v. Schweiker*, 682 F.2d 707, 711 (8th Cir.1982). Thus the expert must have evaluated claimant's particular impairments as contained in the record. *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1155 (3d Cir. 1983) (per curiam); *McGhee v. Harris*, 683 F.2d 256, 259 (8th Cir.1982).

In this case the ALJ asked the Secretary's vocational expert, Dr. Gannoway, three hypothetical questions, the last two of which focused upon appellant's ability to perform in a new occupation. In the second hypothetical, the ALJ asked Dr. Gannoway to assume appellant had all the limitations and pain alleged in the record. Dr. Gannoway responded that appellant could not engage in other work. Finally,

he asked Dr. Gannoway the question described *supra* at page 215, containing a number of assumptions drawn from Dr. Holloway's testimony. Based upon the answer to this question the ALJ posited that appellant could work in a variety of sedentary, semi-skilled jobs present in the national economy and apply the skills he learned as a crane operator to a new occupation. Indeed, the answer to this hypothetical question formed the basis of the ALJ's application of Rule 201.11 of the grids, which dictated a finding that appellant was not disabled.

Assuming, *arguendo*, that the ALJ's characterization of appellant's physical condition is justified by the record, it is, nevertheless, incomplete in that it fails to consider two specific impairments. These impairments, dizziness and blurred vision, are medically undisputed and could seriously affect appellant's ability to engage in alternative employment. The ALJ did not mention these problems in his question, referring instead to "a history of treatment for a variety of impairments." In our view, the fact that these conditions were not included in the hypothetical question rendered that question defective, and thus the expert's answer cannot be considered substantial evidence. *See Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1155 (3d Cir.1983).

The Secretary argues in its appellate brief—post hoc—that appellant's dizziness and blurred vision were merely symptoms of his diabetes and hypertension and thus were implicit in the ALJ's hypothetical question, and also that these diseases, and the symptoms thereof, were controllable by medication and diet. While we note that the medical adviser did testify that diabetes and hypertension are often associated with these symptoms and that proper medication and diet should control these diseases, there was no evidence and no finding that such treatment would directly eliminate these symptoms. Moreover, the persistence of these symptoms despite appellant's use of medication dictates that the ALJ

mention these symptoms specifically in his hypothetical question.

The insufficiency of the ALJ's proffered hypothetical question and the corresponding deficiency in the answer of the vocational expert would also necessitate a remand to the Secretary for further proceedings. *See Wallace v. Secretary of Health and Human Services,* 722 F.2d 1150, 1155 (3d Cir.1983). The consequences of this tainted hypothetical question go far deeper, however. The ALJ's conclusion that appellant possessed the residual capacity for sedentary work is, in fact, fatally undermined because the vocational expert's answer to the ALJ's second hypothetical question conceded that with blurred vision and dizziness appellant could not perform such work. If that record cannot be repaired, there is no question but that appellant must be deemed disabled.

### C.

Finally, we must consider the ALJ's findings concerning the transferability of appellant's skills. For purposes of this penultimate section of the opinion, we will assume, contrary to our finding in Section A, that substantial evidence supports the ALJ's conclusion that appellant maintained a capacity for sedentary work. Under such circumstances, the determination of appellant's disability status turns upon the ALJ's conclusion that the skills appellant acquired as a crane operator were transferable to sedentary jobs existing in the national economy.[5] The ALJ, in concluding that appellant's skills were transferable, relied upon the testimony of the vocational expert. He testified as to the physical requirements and skills of any new occupation for appellant as follows:

**5.** Appellant's age, educational level, and the skill level of his previous job are undisputed. Appellant's previous occupation as a crane operator is characterized by the ALJ as skilled work. For purposes of applying the Medical-Vocational Guidelines, work experience is divided into two categories, "unskilled or none" and "skilled or semiskilled." 20 C.F.R. § 404, Subpart P, Appendix 2. It is unnecessary for this court to

[T]here would be a transference of occupationally significant skills of his ability to use his hands and feet dexterously, knowledge of tools and equipment, and general mechanical knowledge to a number of other jobs. Given the restrictions of his limitations in working around machinery, and moving parts, these [jobs] would be primarily found in the manipulating work group and the handling work group ....

Dr. Gannoway stated that the handling jobs would be generally unskilled while the manipulating jobs would be categorized as semi-skilled. When asked to define further what skills appellant would be able to transfer to any new occupation, he replied:

The skills and aptitudes that he will transfer are those of his special [spacial?] perception, form perception, motor coordination, which are required, in general, to some degree by the jobs to which I have testified to, the ability to operate switches, dials, levers, which would be similar, but not necessarily exactly the same in the jobs to which I have testified that involve the use of small tools. The very ability to use his hands and fingers dexterously is a direct transference from a more skilled to a less skilled position.

The ALJ, in his report, essentially adopts all the views of the vocational expert, concluding:

... certain skills [appellant] developed are transferable to meet the requirements of jobs in the sedentary category, including capacitor assembler, component mounter, and box coverer.

The three jobs mentioned by the ALJ are all in the "handling category" and are unskilled jobs.

The Secretary has formulated the following definition of transferable skills:

determine if appellant's experience was skilled or semi-skilled, for the evidence clearly suggests that it was not an unskilled position. For definitions of skill requirements, see 20 C.F.R. § 404.1568. His age at the time of the hearing is defined in the regulations as "closely approaching advanced age," and his education (ninth grade) is defined as "limited or less."

220

*Skills that can be used in other work (transferability).*

(1) *What we mean by transferable skills.* We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

2) *How we determine skills that can be transferred to other jobs.* Transferability is most probable and meaningful among jobs in which—

(i) The same or a lesser degree of skill is required;

(ii) The same or similar tools and machines are used; and

(iii) The same or similar raw materials, products, processes, or services are involved.

(3) *Degrees of transferability.* There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

20 C.F.R. § 404.1568(d).

Recently, in Social Security Ruling 82–41, the Secretary clarified the regulations concerning transferability. The ruling discusses several issues central to an understanding of the ALJ's decision in the instant case. These issues may be summarized as follows:

1. A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level.

2. A job such as a "bulldozer operator," and, presumably, a crane operator, is at the lower level of skilled work.

3. Transferability generally increases with the skill level of the previous job.

4. *Job skills acquired in very specialized work or work in an isolated vocational setting and not readily usable elsewhere are not transferable.*

5. *Terms such as "alertness," "coordination," and "dexterity" describe traits,* i.e., aptitudes and abilities, rather than acquired work skills.[6] (Emphasis added).

Applying these regulations to the record in this case, we conclude that the ALJ erred for two independent reasons when he found that appellant's work skills were transferable. The only qualities identified as transferable in this case are aptitudes, not skills. When asked by appellant's attorney, the vocational expert stated only that there would be transferability of "special perception [sic], form perception [and] motor coordination." These qualities are abilities and aptitudes necessary in nearly all jobs, *see* C.F.R. § 404.1521(b), rather than the work skills that may support a finding of transferability. Several courts have held that equating the substantial vocational asset of transferable work skills with such common aptitudes constitutes an incorrect application of the Secretary's policy. *See Vasquez v. Secretary of Health and Human Services,* 683 F.2d 1, 4 (1st Cir.1982); *Blake v. Secretary of Health and Human Services,* 528 F.Supp. 881, 886 (E.D.Mich.1981). *See also Wal-*

**6.** *See also* 20 C.F.R. § 404.1521(b):

When we talk about basic work activities, we mean the *abilities and aptitudes* necessary to do most jobs. Examples of these include—(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for see-ing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting. (Emphasis added).

*lace v. Secretary of Health and Human Services,* 722 F.2d 1150, 1156 (3d Cir.1983) (dicta). In *Wallace,* where we faced a similar confusion, Judge Adams wrote:

> In describing what transferable skills had been acquired, the vocational expert merely recited basic work traits necessary to most jobs, ... not acquired vocationally significant work activities. However, we note the "[i]t is the acquired capacity to perform work activities with facility (rather than the traits themselves) that gives rise to potentially transferable skills." Social Security Ruling 82–41 at § 2(d). *See also* 20 C.F.R. § 404.1565(a). If aptitudes common to most people are equated with the "substantial vocational asset" of transferable work skills, there would be in esence no distinction between unskilled and semiskilled individuals for purposes of transferability. Thus, it would appear that the vocational expert's opinion is predicated upon an incorrect application of the Secretary's own ruling.

*Id.* at 1156.

A finding of transferability is also erroneous on the present record in this case because the ALJ's formal finding[7] only identities "capacitor assembler, component mounter, and box coverer" as the jobs to which appellant's skills would be transferable. As we noted above, all three of these jobs are unskilled. This fact is critical because the regulations do not permit benefits to be denied based on the transfer of skills to unskilled jobs. *See* Social Security Ruling 82–41 § 2(b) ("Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of *other skilled or semiskilled jobs.*") (emphasis added). Indeed, it is counterintuitive to suggest that skills can be transferred to unskilled work, and we reject any contention that such transfer can occur. We therefore hold that the Secretary erred as a matter of law[8] in concluding that appellant had transferable skills and that she erred by applying the incorrect grid from the medical-vocational guidelines. The appropriate rule in this case, Rule 201.10, directed a conclusion that appellant is disabled. *See* 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.00(a) (if the "findings of fact ... coincide with all the criteria of a particular rule," then the Secretary must follow it).[9]

### III.

A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing. The Court of Appeals also retains this discretion and, in reversing or modifying the Secretary's decision, may choose to remand to the Secretary for a further hearing or simply direct the district court to award benefits. *See, e.g., Parsons v. Heckler,* 739 F.2d 1334 at 1341 (8th Cir.1984);[10] *Smith v. Heckler,* 735 F.2d 312, 318 (8th Cir.1984); *Lewin v. Schweiker,* 654 F.2d 631, 635.

The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a

---

7. The formal findings constitute the only operative segment of the ALJ's report. The portion of the report that precedes the formal findings contains only a summary of the evidence.

8. Our scope of review on matters of law is plenary.

9. We should note that, given appellant's current age of 57, which is classified as "advanced age" under these regulations, different rules within the grid would now apply in any new proceedings. However, even under these rules, a determination of disability would still turn on the issue of transferability of skills. Rule 201.02, which applies to claimants with a residual functional capacity for sedentary work, advanced age, limited education, previous skilled or semiskilled work, and nontransferable skills, dictates a finding of disability.

10. In *Parsons,* the court concluded that: "If the record as presented to the ALJ contains substantial evidence supporting a finding that the claimant was disabled, then a reviewing court may reverse and remand the case to the District Court for entry of an order granting benefits to the claimant." *Parsons,* at 1341.

whole indicates that the claimant is disabled and entitled to benefits. *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982); *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981). *See Parsons v. Heckler,* 739 F.2d 1334 at 1341 (8th Cir.1984); *Smith v. Heckler,* 735 F.2d 312, 318 (8th Cir.1984); *Baugus v. Secretary of Health and Human Services,* 717 F.2d 443, 448 (8th Cir. 1983); *Rini v. Harris,* 615 F.2d 625, 627 (5th Cir.1980); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 44 (2d Cir.1972). When faced with such cases, it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits.[11]

 In this case we have identified several substantial errors in the administrative record. It is conceivable that two of these errors could be remedied on remand to support properly the finding that the appellant is not disabled. If there were a subsequent proceeding, the ALJ would have an opportunity to evaluate more fully the testimony of appellant and his personal physicians, and perhaps to comply with *Dobrowolsky, Wier,* and *Cotter.* Also, after considering additional vocational evidence, the ALJ might clarify in the formal findings the nature of the skills that the appellant is able to transfer to a new job. Correction of these possibly formal errors, however, would not appear to be enough because there are more serious defects in the record and to cure them the Secretary would have to present much stronger medical and vocational evidence in support of her finding that appellant is not disabled. The existence of such probative evidence is doubtful, however, because it has not yet been produced in a disability determination

that is already over five years old and because the Secretary has the burden of proof on these issues. *See Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979).

First, we must focus on the critical hypothetical questions that the ALJ posed to the expert. It is clear given the medical record before us, especially Dr. Michaelson's and Dr. Mersky's reports, that in a remand proceeding it is very unlikely that the Secretary would be able to establish that appellant possessed the residual capacity for sedentary work. It would appear that such residual capacity could be demonstrated only if further time-consuming medical evaluations demonstrated that medication was effective in controlling appellant's dizziness and blurred vision and that any such medication did not also cause some other disabling side effect. Second, we must consider whether the Secretary could adduce substantial evidence to support a conclusion that appellant possesses skills transferable to other semi-skilled jobs. There is a suggestion in the vocational expert's testimony that the appellant's knowledge of the operation of controls might be such a transferable skill. Although we agree that in some cases the knowledge of the operation of controls in a stationary crane might be a transferable skill, and it is arguable that the vocational expert so testified and the ALJ so found, the record before us suggests that this is not such a case. We review here the case of an appellant whose only work for thirty-two years has been operating a steel mill's crane, and who has substantial physical and intellectual limitations. Any skills acquired by his working in the cab of a crane in a steel mill clearly exist in an isolated vocational setting. *See* 20 C.F.R. § 404.-1568(d)(3); Social Security Ruling 82–41. Thus, in the absence of other, more compel-

---

11. It is apparent that direct reversal of the Secretary is no longer an uncommon judicial remedy. In a recent opinion, Judge Barry of the District of New Jersey has set forth fiscal year 1983 data, supplied by the Social Security Administration which establish that, in 29.4% of "Disability Final Court Decisions" by district courts, the Secretary's disability determinations were reversed without remand. *See Tustin v. Heckler,* 591 F.Supp. 1049, 1059 (D.N.J.1984),

vacated in part and remanded, 749 F.2d 1055 (3d Cir.1984). For recent cases in which this court has reversed the Secretary's disability determination and ordered an award of benefits, see, *e.g., Landis v. Secretary of Health and Human Services,* No. 84–1019, at 5–6 (3d Cir. Sept. ___, 1984) (unpublished memorandum opinion); *Keegan v. Heckler,* 744 F.2d 972, 978 (3d Cir.1984).

ling evidence, these factors would indicate that there can be no transferability in this case. Nevertheless, the Secretary concluded that the appellant's skills were transferable without producing any evidence to indicate how his skills would be "readily usable" in the manipulating jobs category.[12] Thus, even if we assume, as we must because of the insufficiency of evidence to support this finding, that appellant possesses skills that may be transferable, there is *no* evidence that the skills would be transferable to the jobs mentioned by the vocational expert, but not by the ALJ in the findings. In fact, the record evidence suggests that just the opposite is true.

In light of all these deficiencies in the record and the failure of the Secretary to cure them in the second proceeding before the ALJ, we conclude that it would be virtually impossible for the Secretary in a third hearing to adduce the new vocational and medical evidence that would be necessary to support a finding that this appellant is not disabled.

In *Smith v. Califano*, 637 F.2d 968, 973 n. 1 (3d Cir.1981), where we reversed a summary judgment of the district court without remand to the Secretary, Judge Higginbotham noted:

These deficiencies in the findings of the ALJ are not attributable to any error of the claimant .... Smith has already had two hearings before an ALJ, followed by two petitions to the Appeals Council, two appeals to the United States District Court ... and an appeal to this court ... Must an indigent claimant, who has already battled for seven years, wait with the patience of Job for yet another remand before he can collect the relatively modest amounts available through such an award? We think not .... [T]he majority believes a further remand would be unnecessary and a contravention of fundamental justice.

We also are unwilling to remand this case to the Secretary for the record to be further clarified when the appellant already is before this court on a second appeal, after numerous errors of procedure and law by the Department of Health and Human Services. He has waited for over five and one-half years to have his claim for Social Security disability insurance benefits properly determined. *Cf. Weir ex rel. Weir v. Heckler*, 734 F.2d 955, 956–57 (3d Cir.1984) (discussing problems in determining eligibility for disability benefits). If it would not be impossible for the Secretary to repair the record, it would at least be grossly unfair to give her another chance to do so under these circumstances. Where further administrative proceedings would simply prolong appellant's waiting and delay his ultimate receipt of benefits, reversal is especially appropriate. *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.1981).

Because we find that substantial evidence on the present record dictates a finding by the Secretary that Mr. Podedworny is disabled and entitled to disability benefits, we will reverse the judgment of the district court granting summary judgment for the Secretary and remand this case to the district court with directions to award appellant the benefits to which he is entitled from May 1, 1978.

ADAMS, Circuit Judge, concurring.

I agree with the result reached by the majority, but believe that the defining of the circumstances under which it is appropriate for an appellate court to reverse outright a district court decision affirming the Secretary in a disability case is sufficiently important to add this statement. As I emphasized in *Smith v. Califano*, 637 F.2d 968, 973 (3d Cir.1981) (concurring in part), a court of appeals generally should remand to the Secretary for reconsideration Social Security cases raising substantial questions concerning the sufficiency of the evidence supporting a denial of benefits. Unfortunate delays in rendering proper final determinations of disability, sometimes attributable to the judicial pro-

---

**12.** As we have explained, the jobs in the handling category are unskilled and no skills may be transferred to them. *See supra* p. 220.

cess itself, are not in themselves sufficient to justify an outright reversal of the district court and an immediate grant of benefits. A reversal, as opposed to a remand, is in order only where a fully developed administrative record demonstrates that the claimant is clearly entitled to benefits, and thus a new administrative hearing would serve no useful purpose.

In *Smith*, there was some medical evidence supportive of the Secretary's determination that the applicant was not disabled. A remand would have been fitting in that case in order to allow the Secretary an opportunity to reconcile that evidence with the weighty contrary medical opinion of the treating physician. In Podedworny's case, however, the critical issue is whether the claimant possessed the residual capacity for sedentary work. Undisputed evidence in the record demonstrates that the ALJ's second hypothetical question regarding that topic rested on a proper factual basis. In response to that inquiry the government's vocational expert conceded that the claimant could not do sedentary work. Thus, unlike in *Smith*, a remand on the central issue would serve no useful purpose.