**Norine V. SIDBERRY**

v.

**Otis R. BOWEN, Secretary of Health and Human Services.**

**Civ. A. No. 85–6973.**

United States District Court,
E.D. Pennsylvania.

June 24, 1986.

Gary S. Turetsky, Philadelphia, Pa., for plaintiff.

Margaret Heckler by Susan Dein Bricklin, Asst. U.S. Atty., for defendant.

## MEMORANDUM and ORDER

LOUIS H. POLLAK, District Judge.

Plaintiff seeks review of the decision of the Secretary of Health and Human Services denying her application for disability insurance benefits and Supplemental Security Income. She has moved for summary judgment, arguing that the decision of the Administrative Law Judge (ALJ) was not supported by substantial evidence. In response, the Secretary has moved for summary judgment affirming the Secretary's decision.

Plaintiff is a thirty-three year old woman who suffers severe pain in her chest, upper extremities, and back. She was first hospitalized in 1972, when she had surgery to remove a tumor on the wall of her chest (leimyosarcoma). Surgery included the resectioning of her chest wall, partial resection of two ribs, and the insertion of wire mesh. Over the next thirteen years, plaintiff was hospitalized seventeen times; many of these hospitalizations were necessary to treat the recurrent breakdown of her chest wall. During this period, plaintiff held jobs as a teacher's aide (from 1973 to 1979), and as a social worker (from 1979 to 1984). In her application for disability benefits, she identified the onset date of her disability as June 29, 1984.

The ALJ determined that plaintiff had a severe chest wall impairment, and was unable to perform her past relevant work. Tr. 20, 21. He also concluded, however, that plaintiff did have the residual capacity to perform in such sedentary jobs as ticket booth attendant, cashier, or telephone clerk. When the ALJ determines that a claimant cannot perform past relevant work, the burden shifts to the Secretary to prove that the claimant can perform other work. *Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984). The ALJ's decision that a claimant can perform other work must be supported by substantial evidence, which the Third Circuit defines as " 'such relevant evidence as a reasoning mind might accept as adequate to support a conclusion.' " *Id., quoting Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981). The question in this case is therefore whether the ALJ's decision is supported by substantial evidence, keeping in mind that the burden of proof is on the Secretary.

The ALJ's decision rests on two conclusions. First, although the ALJ stated that, in his view, "the claimant does experience pain," tr. 19, he concluded that her testimony as to the degree of pain she suffers and the degree to which her pain limits her activities was "overstated and exaggerated." Second, the ALJ relied on the answer of a vocational expert, Dr. Jason M. Walker, whose response to the ALJ's hypothetical question suggested that there were jobs in the economy that plaintiff would be capable of performing.

The ALJ did not explain in detail his reasons for discounting plaintiff's testimony. The pertinent parts of his decision read as follows:

> The undersigned has specifically considered the claimant's testimony with regard to the degree and severity of the pain she experiences, and the limitations that such pain imposes upon her ability to function, and finds that, based on the medications she testified that she takes for pain control, and the activities in which she engages, her testimony is overstated and exaggerated.

Tr. 19. In the three preceding paragraphs, the ALJ discussed plaintiff's testimony. He stated that "prior to December, 1984, [plaintiff] was only taking Extra Strength Tylenol for the pain she was experiencing, and after Percocet was prescribed in December, 1984, she testified that she only takes six per week." This statement, read in light of the ALJ's conclusion, and with its repeated use of the word "only," suggests that the ALJ found plaintiff's testimony as to the medication she was taking was inconsistent with her testimony as to her pain. The ALJ also stated that plaintiff contradicted herself in her testimony: at one point plaintiff said that the heaviest object she could lift off a table was a magazine or ashtray, while at another point she said she could lift a half-gallon of milk. Finally, the ALJ noted that the plaintiff's activities included reading novels and magazines, watching television, and cleaning,

painting, and decorating ceramic objects. Tr. 19.

The ALJ's explanation for finding that plaintiff's testimony was exaggerated is not reasonable, and is not supported by substantial evidence. None of the physicians whose reports are part of this record suggested that plaintiff's complaints of pain were exaggerated, or that there was no objective basis for her pain. Moreover, her treating physician and her treating surgeon each identified an objective basis for the pain plaintiff suffered.[1] The ALJ nowhere explains why he did not credit this testimony, particularly the testimony of the treating physician, Dr. James Nicholson, that plaintiff's surgical problems had resulted in disability and an inability to perform work. Tr. 17; tr. 244. The testimony of the treating physician is generally accorded special significance. *Podedworny v. Harris*, 745 F.2d at 217.

The ALJ also discounted plaintiff's testimony about her pain in part because of her testimony that she engaged in painting ceramics, reading, and watching television. Tr. 19. Reliance on such testimony to rebut the testimony of a treating physician, however, constitutes "a basic error in the findings of fact." *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir.1981); *see also id.* ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.").

In addition, the ALJ overlooked, or misstated, other important evidence. For example, the ALJ suggests that plaintiff's medication consisted of Extra Strength Tylenol (until December, 1984), and of Percocet six times per week (after December, 1984). In response to the ALJ's question about the frequency with which she takes Percocet, plaintiff stated:

> Oh, I may take it maybe six times a week if needed. I try to avoid taking it as much as possible. Somedays I do have to take it three or four times a day.

Tr. 41. In addition, plaintiff testified that she took Nalfon, a muscle relaxer prescribed by her treating physician, four times a day. Tr. 45; tr. 277. The ALJ also ignored plaintiff's testimony about the side effects of these drugs, and the impact the drugs had on her capacity to work. Plaintiff testified that the side effects of these drugs were drowsiness, sluggishness, and sometimes blurred vision, and that she had occasionally fallen asleep while driving to and from work, tr. 44.[2]

The ALJ also ignored plaintiff's work history. Although plaintiff has been hospitalized eighteen times since 1972, she nevertheless managed to maintain a job until May, 1984. She attempted once again to return to work in January 1985, but resigned from her job in April, 1985. The job involved taking applications for food assistance at the Emergency Assistance Program. Her most recent supervisor, Mr. Julio Berry, testified that she was often dizzy at work and had trouble standing, sitting, and climbing steps. Tr. 57. He stated that he had to send her home on occasion because she became drowsy due to her medication, that he reduced her job from six to four hours per day, and that even at reduced hours plaintiff could not perform her job one-hundred percent. *Id.*

---

1. Dr. James Harris, plaintiff's treating surgeon, reported that as of August, 1984, plaintiff had "a residual chest wall defect with chronic radicular pain." Tr. 17. Dr. James Nicholson, plaintiff's treating physician, stated that plaintiff's "multiple past surgical problems had resulted in disability and inability to perform work." *Id.* The other two physicians' reports are not inconsistent with those of Harris and Nicholson. Dr. Elio Goren, a consulting physician retained by the Social Security Administration (SSA), examined plaintiff, noted that she was taking Percodan and Motrin for her pain, and did not suggest that there was anything exaggerated about her complaints. *Id.;* tr. 249–50. Dr. Joseph Calamia, another SSA-retained physician, noted that plaintiff was taking Percocet and Nalfon for her pain, and reported that she was "extremely tender" along her chest wall and near the indentation left by her surgery. Tr. 19.

2. In her memorandum, plaintiff cites to passages in the Physician's Desk reference as further evidence that these drugs can cause side effects of drowsiness, dizziness, and lightheadedness. Plaintiff's memorandum at 9 n. 6, *citing* Physician's Desk Reference (38th Ed.1984) at 927–28, 1186. There is no evidence in the record that these drugs do not cause such side effects.

Plaintiff thus appears to have made substantial efforts throughout her life to hold down a job; in such a circumstance, her testimony about her pain would appear deserving of some attention. *Podedworny v. Harris*, 745 F.2d 210, 217; *Taybron v. Harris*, 667 F.2d 412, 415 n. 6 (3d Cir.1981) (per curiam). The ALJ, however, did not give this testimony any weight whatsoever.

The ALJ's second conclusion, that the testimony of the Vocational Expert, Dr. Walker, supported the ALJ's decision that plaintiff could still perform sedentary jobs, is also not supported by substantial evidence.[3] Dr. Walker did state that a person with the characteristics the ALJ described in a hypothetical question could perform a number of sedentary jobs. The ALJ's hypothetical, however, did not precisely describe the plaintiff's situation. The Third Circuit has held that a vocational expert's testimony may constitute substantial evidence only "if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d at 218. In *Podedworny*, the court ruled that the ALJ's hypothetical was deficient because it failed to mention two of plaintiff's impairments, dizziness and blurred vision. *Id.* In this case, the ALJ's hypothetical excluded any mention of the side effects of plaintiff's medications, which could include dizziness, drowsiness, and lightheadedness, and of plaintiff's pain in her right side. Yet plaintiff told the ALJ after he posed the hypothetical, and during the course of Dr. Walker's testimony, that she experienced pain in her right side, had difficulty at times using her right hand, and she experienced drowsiness from taking her medication. Tr. 63–64; *see also* tr. 44–45 (earlier testimony that medication caused drowsiness, and caused her several times to fall asleep at the wheel of her car). Although plaintiff's testimony came after the ALJ posed his hypothetical and before Dr. Walker finished his testimony, the ALJ did not take the opportunity to reformulate his hypothetical.

Plaintiff's counsel, however, did ask Dr. Walker whether any of the employers to which he referred in answering the ALJ's hypothetical would allow an employee to leave a work station and lie down periodically, if that were necessary; Dr. Walker said that none of the employers would allow that. Tr. 67. In response to further questioning from counsel, Dr. Walker stated that the characteristic of becoming drowsy unpredictably "would have an effect on any type of work activity." Tr. 69. He also stated, however, that he would need more information about the side effects of the medication on plaintiff before he could state precisely the impact of the side effects on plaintiff's employability. Tr. 68–69. In his decision, the ALJ made no reference to any of this testimony.

In light of *Podedworny* and of the ALJ's failure to formulate a hypothetical that accurately portray's plaintiff's condition, it is clear that the testimony of the vocational expert on which the ALJ relied was not substantial evidence. Since neither of the ALJ's rationales for deciding that plaintiff was able to perform sedentary work are

---

3. Although not relied upon by the ALJ, a statement made by plaintiff that at first glance appears to support parts of Dr. Walker's testimony appears in Dr. Goren's report. According to Dr. Goren, plaintiff stated that "she could do desk work or paper work but is unable to do laboring work or factory work ..." Tr. 249. Dr. Goren did not himself evaluate whether plaintiff could perform work for which she could be compensated; he did state that: "At this time [September 17, 1984] she [plaintiff] has limitations of exercise work involving the upper torso but is able to do simple sedentary activity." *Id.* 249. Dr. Goren also noted, however, that he expected her to have surgery again, and that "although she is not completely limited in terms of activity, there are some significant things she is unable to [do] because of the recurrent surgeries as well as because of the multiple hospitalizations she has had to undergo." *Id.* Dr. Goren's prediction of future surgery was correct. Plaintiff was admitted to the hospital two days after Dr. Goren's report, and had surgery shortly thereafter to replace part of the structure in her chest wall; she had surgery again in May, 1985. Furthermore, in the months following Dr. Goren's examination, plaintiff attempted to keep a desk job, but as her testimony and that of her supervisor, Mr. Berry, indicated, she was unable to work even four hours a day. Plaintiff's statement in Dr. Goren's report therefore does not constitute an admission by plaintiff or substantial evidence that plaintiff is able to perform sedentary work.

supported by substantial evidence, the only question remaining is whether to remand the case to the ALJ for reconsideration in light of the factors discussed in this Memorandum, or to grant plaintiff's motion for summary judgment. A district court may decide to award benefits "only when the administrative record has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris,* 745 F.2d at 221–22 (citations omitted).

In *Podedworny,* the court decided that a remand was unnecessary, since the record was fully developed and supported a finding that plaintiff was disabled. The court also noted that the plaintiff had already been through two hearings before the ALJ, and that it would be virtually impossible in a third hearing for the ALJ to adduce enough new evidence to support a finding that the appellant was not disabled. *Id.* at 222–23.

■ In this case there has been only one hearing before the ALJ. Nevertheless, the record at this point, containing the reports of four physicians, the testimony of plaintiff and of plaintiff's most recent employer, and of a vocational expert, is fully developed. It is clear that plaintiff has a severe impairment, that she is suffering pain, and that there is an objective basis for her pain. In testimony ignored by the ALJ, plaintiff stated that she occasionally had to take Percocet three or four times per day, and that she took Nalfon four times per day. She also testified that these drugs made her drowsy and dizzy at work, and that she had to lie down or take breaks periodically during the day, and that as a result she was not able to keep this job. Tr. 49. This testimony was not contradicted by any of the examining physicians, and was corroborated by the testimony of plaintiff's employer, tr. 57. When vocational expert Walker was asked on cross-examination whether any of the jobs for which plaintiff might otherwise be suited would allow her unpredictably to leave a work station to lie down, he responded that none of them would.

There is thus no substantial evidence in the record to support the Secretary's conclusion that plaintiff is capable of working; at most, there is Dr. Walker's statement that he would need further information about the side effects plaintiff suffered before concluding whether she was employable. There is ample evidence, however, that plaintiff, as a result both of the pain she suffers and of her medication, periodically and unpredictably needs to take breaks and to lie down, a requirement which Dr. Walker stated that no employer could accommodate. It appears, then, that there are no avenues of inquiry still open that might produce substantial evidence to support the Secretary's conclusion. I conclude that plaintiff is entitled to benefits, and that the judgment of the ALJ must therefore be reversed. Accordingly, plaintiff's motion for summary judgment will be granted, and defendant's motion will be denied.