Kandase URBAN, Appellant
Below, Appellant,

v.

Vincent P. MECONI, in his official ca-
pacity as Secretary of the Delaware
Department of Health and Social Ser-
vices, Appellee Below, Appellee.

No. 439, 2006.

Supreme Court of Delaware.

Submitted: May 23, 2007.

Decided: Aug. 10, 2007.

MaryBeth Musumeci, Esquire, Community Legal Aid Society, Inc., Wilmington, Delaware, for Appellant.

A. Ann Woolfolk, Esquire, State of Delaware Department of Justice, Wilmington, Delaware, for Appellee.

Before BERGER, JACOBS and RIDGELY, Justices.

BERGER, Justice.

In this appeal, we consider whether the Delaware Department of Health and Social Services (DHSS) properly denied a claimant's request for surgery under the Medicaid Early and Periodic Screening Diagnostic and Treatment (EPSDT) program. DHSS determined that the surgery was not the "least costly, appropriate, available health service alternative"[1] because the claimant would benefit from weight loss prior to surgery. The claimant's treating physician determined that the surgery was

---

1. Joint Appendix, A–99.

medically necessary, after giving consideration to her weight. In addition, the claimant obtained a second opinion confirming that surgery was medically necessary. DHSS's contrary decision failed to consider the treating physicians' opinions and was not supported by substantial evidence. Accordingly, we reverse.

### Factual and Procedural Background

Kandase Urban, who is now almost 20 years old, is suffering pain, rashes, and other adverse effects from bilateral macromastia. She receives Medicaid benefits through Delaware Physicians Care, Inc. (DPCI), the managed care program that administers the Delaware Medical Assistance Program. In December 2004, Urban's primary care physician referred her to Dr. Lawrence Chang, a plastic surgeon, for consideration of breast reduction surgery. Chang noted that Urban was obese (she is 5 feet 2 inches tall and weighed 198 pounds at that time); and that she was suffering from chest and back pain, rashes, shoulder grooving and depression. In a letter submitted to DPCI on December 22, 2004, Chang concluded:

> My overall impression is symptomatic bilateral macromastia with associated obesity. She would benefit from a reduction mammoplasty, but her weight should ideally come down to the 160 range if possible, or show no increase in size. I feel the better option would be to refine with diet and exercising. However, the exercising may be difficult due to enlarged breasts. The mother states that they will work on the diet program, but we will submit this for preauthorization for reduction mammoplasty, and see her back within 6–8 weeks time to see what her weight status is.[2]

In January 2005, DPCI denied the request, stating that Urban is obese and that "[w]eight reduction would likely be in her best health interests as well as instrumental in reducing breast size."[3] Urban requested an appeal with DPCI and a "fair hearing" with the Department of Health and Social Services Division of Medicaid and Medical Assistance. In February 2005, DPCI denied Urban's appeal. The denial letter repeated DPCI's earlier explanation about weight reduction being in Urban's best interests. In addition, the denial letter stated that the requested surgery does not meet Delaware's definition of medical necessity because surgery is not "the most appropriate care or service that can be safely and effectively provided"[4]; and because it is not the treatment of choice or common medical practice.

In May 2005, after Urban had succeeded in losing approximately 15 pounds, she had a second appointment with Chang. He noted that, despite losing weight, Urban's breast size and symptoms remained the same. By letter dated May 13, 2005, Chang again requested authorization for breast reduction surgery. In his May letter, Chang stated:

> My initial recommendation was for her to reduce some weight, which she has successfully done and come down at least 15 pounds.
>
> * * *
>
> She has done very well as far as improving her weight. I feel that having the 15 pound weight loss should allow a better result from a bilateral reduction mammoplasty, and I feel that she is at a reasonable weight at this present time

2. Joint Appendix, A–4.

3. Joint Appendix, A–5.

4. Joint Appendix, A–8.

to proceed with surgery. My recommendation is to do a resection.... [5]

Two weeks after seeing Chang, Urban sought a second opinion from Dr. Benjamin Cooper, also a plastic surgeon. Cooper agreed with Chang's diagnosis of symptomatic macromastia, and he also agreed that Urban would benefit from breast reduction surgery. Cooper submitted his own request for authorization, although it is not clear from this record whether DPCI received or responded to it.

DHSS considered Urban's appeal at a hearing on August 15, 2005. Dr. Phillip Waldor, DPCI's medical director, testified that Urban does not qualify under the criteria DPCI uses because she is obese. Waldor determined that Urban had a Body Mass Index (BMI) of 36 at the time Chang first requested authorization. He testified that DPCI would approve the surgery if Urban reduced her weight to 160 pounds, which would bring her BMI below 30. To assist in that effort, DPCI authorized Urban to have multiple visits to a nutrition clinic. Shortly before the hearing, Waldor testified that he tried to find out Urban's "current weight status to determine whether we could have possibly approved this at this point...." [6] He was unsuccessful, but he reaffirmed to the hearing officer that DPCI would approve surgery if Urban's weight came down to 160 pounds.

Dr. Benjamin Cooper testified that surgery was necessary to alleviate Urban's back pain and rashes. He explained that a study sponsored by the American Society of Plastic Surgery supported his opinion. Cooper stated that women with macromastia rarely lose significant amounts of weight prior to surgery, and that he was not sure whether there would be any benefit if Urban lost another 10–15 pounds (other than the general health benefit of being closer to an optimal weight). On the other hand, Cooper could not say that delaying the surgery would cause any physical harm to Urban.

Urban's mother, Lisa Barben, testified about how Urban's condition limited her daily activities. She said that Urban does not walk straight and cannot engage in any physical activities for long periods of time without chest and back pain. Urban lost her part-time job at a fast food restaurant because she could not meet the physical demands of the work. On cross-examination, Barben testified that she did not think Urban's macromastia could be resolved through weight loss. She based that opinion on the fact that, despite having lost about 15 pounds during the period from December 2004–May 2005, Urban's breasts had increased in size.

From this record, DHSS concluded:

Claimant's general health is important enough to warrant additional weight loss efforts, rather than proceeding immediately with breast reduction surgery based on a belief that her breast size will never decrease no matter how much weight she loses.

* * *

Because allowing the Claimant to continue her weight loss efforts will not negatively impact her from a physical perspective and will positively impact her from a surgical perspective if she does qualify for the surgery, approving her breast reduction surgery at this point is not the least costly, appropriate, available health service alternative and does not represent an effective and appropriate use of program funds.[7]

---

5.  Joint Appendix, A–15.

6.  Joint Appendix, A–32.

7.  Joint Appendix, A–99–100.

The Superior Court affirmed. It found that DHSS's decision was supported by the record because all of the doctors agreed that Urban would benefit from weight loss before surgery, and authorization for surgery was "only postponed." This appeal followed.

### Discussion

The Medicaid Act[8] is a federal-state program designed to provide medical care for those without sufficient financial resources to pay for that care themselves. As a participating state, Delaware must comply with federal statutory and regulatory requirements. Under the Act, states are required to provide "early and periodic screening, diagnostic, and treatment services" (EPSDT) for Medicaid-eligible individuals under 21 years old.[9] Those services include: "necessary health care, diagnostic services, treatment, and other measures ... to correct or ameliorate defects and physical and mental illnesses and conditions ... whether or not such services are covered under the State plan."[10]

■ This Court, like the Superior Court, reviews the DHSS fair hearing decision to determine whether it is supported by substantial evidence and free of legal error.[11] Urban argues that DHSS erred in numerous respects, including: 1) applying the wrong definition of medical necessity; 2) improperly allocating the burden of proof[12]; 3) failing to consider all of the evidence; and 4) failing to give deference to the opinions of her treating physicians. We do not reach all of Urban's claims because we conclude that Urban's last two arguments have merit, and that the record as a whole, when properly considered, mandates approval of Urban's surgery.

The Delaware Social Services Manual (DSSM)[13] sets forth the practice and procedures governing fair hearings for public assistance programs, including Medicaid. DSSM § 5406.1 provides that the hearing officer must follow applicable federal and state court precedent, in that order. Thus, we look to the United States Court of Appeals for the Third Circuit for its articulation of the "substantial evidence" standard of review as well as the deference to be accorded to a treating physician's opinion. In deciding whether claimants are entitled to social security disability benefits, that court explained:

> This Court has defined substantial evidence as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion...." This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed

---

8. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396s.

9. 42 U.S.C. §§ 1396a(a)10(A), 1396d(4)(B).

10. 1042 U.S.C. § 1396d(5)(5).

11. 31 *Del. C.* § 520; *Stoltz Management v. Consumer Affairs Board,* 616 A.2d 1205 (Del. 1992).

12. Although we do not reach this issue, we consider it noteworthy that DHSS, itself, took the position that the relevant sections of the Delaware Social Services Manual are inconsistent and "improper." (Appellee's Answering Brief at 17–18). In light of that admission, we assume DHSS is reviewing the Manual and making appropriate changes.

13. CDR 16 5000.5100.

by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.[14]

The federal court requires that the administrative decision-maker (here, DHSS) give "substantial weight" to the opinions of treating physicians;[15] that DHSS generally should give less probative weight to the opinion of a physician who has never examined the patient;[16] that DHSS should explain its reasons for rejecting any expert evidence;[17] and that DHSS should not substitute its expertise for the competent medical evidence.[18]

■■■ The record establishes that DHSS failed to adhere to these standards in affirming the denial of Urban's surgery. Waldor was the only witness for DPCI. He never examined Urban, and he never explained the basis for DPCI's requirement that a claimant not be obese in order to qualify for reduction mammoplasty. In

fact, Waldor agreed that the surgery is medically necessary—he testified that he would approve the surgery if Urban's weight came down to 160 pounds.

Urban's treating physicians[19] both testified that surgery was medically necessary at her then current weight of approximately 182 pounds. There was no evidence disputing the necessity of the surgery, or the fact that reduction mammoplasty is the standard of care for Urban's medical condition. The only issue, as revealed at the fair hearing, was whether Urban would benefit from additional weight loss before surgery.

Not surprisingly, all the doctors agreed that she would. Moreover, Cooper acknowledged that, if Urban were able to bring her weight down to 160 pounds, that weight loss *possibly* could have "some impact" on her breast size.[20] But Urban's doctors considered her weight, and the amount she had been able to lose,

14. *Brewster v. Heckler*, 786 F.2d 581, 584 (3rd Cir.1986) (Citations omitted; emphasis in original.).

15. *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150,1155 (3rd Cir.1983).

16. *Podedworny v. Harris*, 745 F.2d 210, 217 (3rd Cir.1984).

17. *Id.* at 218.

18. *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3rd Cir.1983).

19. DHSS complains that Cooper is not Urban's treating physician, and that Chang's second letter should not be considered because it post-dates the January 2005 denial of the request for surgery. Cooper was consulted for a second opinion, and he testified that he examined Urban, recommended surgery, and submitted a request for authorization. Presumably, if that request had been approved, Cooper would have *become* Urban's treating physician. Whether he qualified for the title "treating physician" before that time is not particularly important on this record.

As a surgeon who examined Urban, his medical opinion deserved more weight than Waldor's.

On the second issue, we find it difficult to understand DHSS's position. Chang's first letter explained that he was going to follow-up with his patient to review her weight loss and decide whether she was ready for surgery. The second letter provided that follow-up. Surely DHSS is not suggesting that the long and expensive application/appeal process must be started again in order to consider a medical update from Urban's treating physician. As it is, this process has taken more than two years, during which time Urban has had to cope with the pain and debilitating effects of her medical condition, without relief. Moreover, and to his credit, Waldor testified that he was prepared to approve the surgery *at the time of the hearing* if Urban lost the weight he deemed necessary. Thus, Waldor tacitly acknowledged that the fair hearing decision should be based on Urban's then current medical condition. We agree.

20. Joint Appendix, A–55.

and prescribed surgery as the medically necessary, appropriate treatment. Cooper explained that women suffering from symptomatic macromastia usually are overweight, and that weight loss generally does not eliminate the need for breast reduction surgery. In Urban's case, the evidence was that she lost 15 pounds without any reduction in breast size.

DHSS concluded that Urban should try to lose more weight before, and perhaps in lieu of, surgery. DHSS acknowledged that Urban's weight loss thus far had not reduced her breast size, but it noted that weight loss would be good for Urban and that Cooper "opined" that additional weight loss might result in breast reduction. DHSS never even mentioned the fact that both Chang and Cooper opined that surgery, without additional weight loss, was medically necessary. Thus, it appears that DHSS not only failed to give any deference to the competent medical evidence, but also it failed to consider that evidence at all.

Having carefully reviewed the record, we conclude that DHSS's decision was not supported by substantial evidence. There was no evidence that Urban's condition could be treated by weight loss alone, and all of the medical evidence confirmed that surgery was necessary. Accordingly, authorization for Urban to undergo reduction mammoplasty should have been granted.

### Conclusion

Based on the foregoing, the decision of the Superior Court is reversed and this matter is remanded for the Superior Court to enter an order in accordance with this decision.