Nancy **ROSARIO**

v.

Donna E. **SHALALA.**

Civ. A. No. 93–0511.

United States District Court,
E.D. Pennsylvania.

Sept. 17, 1993.

258

Debby Freedman, Community Legal Services, Inc., Philadelphia, PA, for plaintiff.

Dorothea J. Lundelius, Sp. Asst. U.S. Atty., Health & Human Svcs.—Region III, Philadelphia, PA, for defendant.

## MEMORANDUM

GILES, District Judge.

Nancy Rosario ("Rosario") brings this action pursuant to 42 U.S.C. § 1383(c)(3), which incorporates by reference 42 U.S.C. § 405(g), for review of the final decision of the Secretary of Health and Human Services ("Secretary") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act ("Act"). The parties have filed cross motions for summary judgment. For the following reasons, the plaintiff's motion is GRANTED and defendant's motion is DENIED.

## PROCEDURAL BACKGROUND

On August 7, 1990, Rosario filed an application for supplemental security income benefits alleging an inability to work since January 1, 1985, because of nervousness, anxiety, arthritis, and asthma. Record, at 59–62. After denials of her application, Rosario filed a timely request for an evidentiary hearing at the Administrative Law Judge (ALJ) level of review. *Id.* at 106–109.

On February 3, 1992, an administrative hearing was held wherein Rosario and a vocational expert testified. As a result of the hearing, the ALJ found that Rosario (1) had severe impairments but that they did not meet or equal the criteria in the "Listing of Impairments"; [1] (2) had no past relevant work experience; (3) was able to perform work existing in significant numbers in the economy; and (4) had not been under a disability within the meaning of the Social Security Act at any time through the date of his decision. Record, at 11.

On March 24, 1992, Rosario sought review of the ALJ's decision by the Appeals Council. In her application for review, Rosario alleged that "the ALJ's decision is not supported by substantial evidence because the hypothetical question [posed] to the [Vocational Expert] omitted key findings regarding the functional limitations associated with [her] mental impairment." Record, at 5.

On November 27, 1992, the Appeals Council denied Rosario's request for review, finding that "[a] review of the tape hearing testimony reveal[ed] [that] the hypothetical question posed to the vocational expert included all of the limitations as found by the Administrative Law Judge ..." Record, at 3–4.

Rosario has filed this complaint seeking to reverse the Secretary's Appeals Council decision. Before the court are the parties' cross motions for summary judgment.

## STANDARD OF REVIEW

Review of the final decision of the Secretary is limited to a determination of whether that decision is supported by substantial evidence. *Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir.1988). Substantial evidence has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." *Woody v. Secretary of Health and Human Services,* 859 F.2d 1156, 1159 (3d Cir.1988).

Additionally, the Third Circuit has held that an ALJ's findings "should be as comprehensive and analytical as feasible and,

---

1. Under 20 C.F.R. § 404, Subpart P, Appendix 1, a claimant is deemed disabled if the disability is included in the list.

where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis of the decision." *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981). In addition to evidence supporting the result, it is essential that the ALJ's statement include "some indication of the evidence which was rejected." *Id.* There is a particularly acute need for explanation when relevant evidence has been rejected or when there is conflicting evidence in the record. *Id.* at 706. The Third Circuit requires that an ALJ do more than simply state ultimate factual conclusions. *Stewart v. Secretary of Health, Education & Welfare,* 714 F.2d 287 (3d Cir.1983).

## DISCUSSION

### I. Burdens of Proof

To be eligible for disability insurance benefits under the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant is considered to be unable to engage in any substantial gainful activity "[o]nly if [her] physical or mental impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Consequently, in an evidentiary disability hearing there are shifting burdens of proof: The claimant bears the initial burden of proving that he or she is disabled. The claimant satisfies this burden by showing that he or she cannot return to his or her customary occupation. Once this burden is met, the burden shifts to the Secretary, who must prove that the claimant can still engage in [other] substantial gainful activity. The Secretary satisfies this burden by showing that given claimant's age, education, and work experience, he or she can still perform specific jobs that exist in the national economy.

*Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984).[2]

### II. ALJ's Findings

Relying on testimony and medical evidence, the ALJ held that while Rosario suffered from severe impairments, she retained the residual functional capacity to perform a limited range of light work and that there were a significant number of jobs in the national economy that Rosario could perform. Record, at 17. Specifically, he found that although Rosario had nonexertional limitations that did not allow her to perform a full range of light work, there were a significant number of jobs in the national economy which she could perform, such as laundry aide or hand packager. *Id.*

The ALJ concluded that Rosario is a younger individual, age 31, with no past relevant work experience. Record, 15–16. He found that she completed her education through the tenth grade[3], but does not speak or read English well enough to communicate functionally.[4] The ALJ also found that the medical evidence establishes that Rosario has severe low back pain with diagnosed degenerative disc disease of the lumbar spine, generalized myositis, asthma, an affective disorder, a generalized anxiety disorder, and a mixed personality disorder. *Id.* He found that Rosario is only able to work in a "low stress" job environment, and cannot be exposed to respiratory irritants. *Id.* Additionally, in the Psychiatric Review Technique Form attached to the decision, the ALJ found that Rosario "often has deficiencies in concentration, persistence, or pace resulting in failure

2. *See also Green v. Schweiker,* 749 F.2d 1066 (3d Cir.1984).

3. It is unclear from the record whether Rosario completed the tenth or eleventh grade before dropping out of school. However, as a result of the court's disposition of this case, a definitive resolution on this issue is not pertinent here.

4. At the hearing, Rosario was provided with a Spanish interpreter so that she may participate in the proceeding.

to complete tasks in a timely manner." Record, at 21.

Using the Medical–Vocational Guidelines ("grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.16 and testimony and documents submitted at the hearing, the ALJ concluded that Rosario was not disabled. *Id.*

### a. Rosario's Testimony

At the administrative hearing, Rosario testified that she was born in Philadelphia on August 10, 1961, Record, at 59; that she completed the tenth grade, *Id.;* and that all her high school classes were in Spanish. She testified that she understands very little English, and cannot read, write, or speak English. *Id.* Rosario required a Spanish interpreter at the administrative hearing. *Id.* at 31–32. Rosario testified that she has never worked outside the home, and that she watches Spanish soap operas on TV. *Id.* at 16, 41.

Rosario also testified as to her psychiatric problems. Specifically, she stated that she has visual and auditory hallucinations. She sees things that are not really there and hears voices calling to her. Record, at 36–37. She stated that she is afraid to be alone and she has trouble shopping and taking public transportation by herself because she gets confused and has trouble remembering what she is doing. *Id.* at 38–39. Rosario testified that she sometimes has to be reminded of her appointments or she will not remember to go. *Id.* at 38.

Rosario noted on her request for an administrative hearing that, she "cannot concentrate and [has] trouble fulfilling tasks at any level." Record, at 110. She testified that she frequently gets into arguments with her neighbors, after which she cries, gets nervous, and stays in the house for several days and tries to rest. *Id.* at 39. She also testified that she fights with her sister and does not have much patience with her siblings. *Id.* at 42, 46. Finally, Rosario testified that her psychiatric problems have gotten worse in the two years preceding her hearing. *Id.* at 43.

In addition to psychiatric problems, Rosario testified to having asthma and pain in the lumbar area of her back. Record, at 34. She testified that she has been an asthmatic for the last three years and that her condition is exacerbated by dust and exposure to animals. *Id.* Rosario also testified that she suffers daily from pain in the middle and lower portions of her back and, that as a result, she is not able to remain seated or standing for a long time. *Id.* at 35. Rosario stated that she can only stay seated for less than half an hour at any period of time and that she can stand and walk for a couple of hours if she takes Motrin, a medication for pain relief. *Id.* at 51.

### b. Medical Evidence

Dr. Francis Talangbayan, Rosario's treating physician since at least 1982, diagnosed Rosario as suffering from asthma and lumbar pain. Over the years, he has treated Rosario for a series of respiratory problems, including expiratory wheezing in both lungs, acute sinusitis, marked congestion, and acute, severe, bronchitis. Record, at 190, 196, 200, 202, 207, 208. Dr. Talangbayan has prescribed Ventolin inhalers, Augmentin, and Ceclor for Rosario's respiratory problems. *Id.* at 191. In 1984 and 1988, pulmonary function tests of Rosario showed severe restrictive and obstructive defects. *Id.* at 207, 232. Dr. Talangbayan diagnosed her lumbar pain as stemming from myositis (inflammation of a muscle) and lumbar disc disease, with some lumbar-sacral instability. *Id.* at 150.

As early as 1986, Dr. Talangbayan diagnosed Rosario as suffering from nervousness and anxiety. Record, at 226. As a result of repeated observations of her anxiety, he referred Rosario to a psychiatrist, Dr. Luis Bird. *Id.* at 36, 181. Dr. Bird diagnosed her as suffering from psychiatric problems and has been treating her for the past two years. *Id.* at 248–252. He has prescribed Imipramine, Buspar, and Pamelor, all medications for the relief and management of anxiety and depression. *Id.* at 263.

Dr. Bird has written two consultative psychiatric reports on Rosario. Record, at 155–159, 161–164. In those reports, he diagnosed

Rosario as suffering from "generalized anxiety disorder," "dysthymic disorder,"[5] and "mixed personality disorder." *Id.* at 157, 163. Dr. Bird found, *inter alia,* 1) that Rosario's anxiety disorder is aggravated by stress, 2) that she is subject to reacting to conflict by losing her temper easily and becoming aggressive, 3) that her ability to make decisions is subject to impairment under stress, 4) that her ability to maintain regular attendance requires a solid support system, and 5) that her ability to perform at a consistent pace is dependent upon the state of remission of her condition. *Id.* at 159, 164.

Additionally, Stephen Rosenfield, a licensed clinical psychologist who performed a consultative psychological examination on Rosario reported that "many of her responses appear to be anxiety related" and that "her tolerance for day-to-day work pressures, such as production demands and schedules, would appear weak, in view of her reported medical concerns along with her never reportedly having worked in the past." Record, at 154.

### c. Vocational Expert's Testimony

At the hearing, the ALJ asked Steve H. Gumerman, the Vocational Expert ("VE"), a hypothetical question containing the ALJ's findings of Rosario's limitations in order to determine whether there were jobs in significant numbers in the national economy which she could perform. Record, at 48–51.

The ALJ asked the VE to assume that Rosario (1) had no past relevant occupation; (2) could perform only unskilled work; (3) is 30 years of age; (4) has a tenth grade level of education; (5) does not speak or read English well enough to communicate functionally in English on a regular basis; (6) can perform light work, exertionally, but must have the work be of a "low stress" level, repetitive in nature, and containing a simple routine and/or instructions; (7) has respiratory problems and cannot be exposed to excessive dust, fumes, smoke, strong chemicals, or other respiratory impairments; and (8) can only stay seated for less than half an hour at any period of time and can stand and walk for only a couple of hours at a time. Record, at 48–51.

In response, the VE opined that there were two jobs existing in the tri-state job market area, in significant numbers, that a person fitting the ALJ hypothetical could perform, that is, laundry aid and hand packager. Record, at 49.

Thereafter, Rosario's attorney asked the VE whether his opinion would change if it were assumed as true that Rosario had a weak tolerance for day to day work pressures, such as production demands and schedules. Record, at 53–54. In reply, the VE stated that he "would have some concerns about [the person's] ability to make it through ... a typical day even as a laundry aid or hand packer." *Id.* at 54–55.

### III. *Rosario's Arguments*

In appealing the Secretary's final decision, Rosario does not dispute the ALJ's findings of her physical impairments. However, she alleges that in forming his hypothetical question for the VE, the ALJ left out pertinent information about her limitations which the ALJ himself found to exist. Specifically, she argues that "the ALJ's finding that [Rosario] often has deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner was not considered in the vocational testimony [upon] which the ALJ relied." Rosario's Brief, at 8.

Furthermore, Rosario alleges that in reply to a question posed by her counsel, which included all of the factors covered by the ALJ's hypothetical and the additional factor omitted, the VE then stated that he would have concerns about the competency of such a person to perform even the two jobs that he listed originally.

5. *The Diagnostic and Statistical Manual of Mental Disorders,* Third Edition–Revised (DSM–III–R) (1987), notes that "the essential feature" of dysthymia is "a chronic disturbance of mood involving depressed mood ... for most of the day more days than not, for at least two years ... [d]uring these periods of depressed mood there are some of the following associated symptoms: poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration or difficulty making decisions, and feelings of hopelessness." DSM–III–R at 230.

Consequently, Rosario contends that the ALJ's decision, which was based upon the original answer given by the VE, is not supported by substantial evidence and, therefore, should be reversed. Rosario seeks an award of supplemental disability insurance benefits, or, in the alternative, a remand of this matter to the ALJ for further administrative proceedings. Rosario's Brief, at 12–13.

## IV. Secretary's Arguments

The Secretary argues that Rosario's claim is without merit since "the [ALJ's] hypothetical question reflected, to the extent supported by the record, [Rosario's] need to avoid a stressful job." Secretary's Brief, at 20. Additionally, she argues that "[t]he [VE] testified that both the job of laundry aid and hand [packager] were not stressful jobs because they were unskilled, routine, repetitive, easily learned, not subject to constant supervision, and involved little, if any, interaction with the public." Id. Consequently, the Secretary contends, that there is substantial evidence to support her determination that Rosario could perform the light work identified by the vocational expert.

## V. Court's Ruling

■ After reviewing the record and considering the parties' arguments, this court finds that the ALJ's decision to deny supplemental disability benefits to Rosario disregarded pertinent evidence, including the VE's crucial opinion.

In response to the ALJ's hypothetical question regarding the existence of jobs in the national economy which could be performed by someone fitting Rosario's physical and mental health characterizations, the VE testified that there were two such jobs existing in the tri-state job market, laundry aid and hand packager. Record, at 49.

However, the ALJ's hypothetical question failed to contain pertinent findings made by the ALJ about Rosario's limitations. In a psychiatric review technique form, which is attached to the decision, the ALJ found that Rosario often has deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. Rec-

ord, at 21. Yet, this information was not included in the questions posed to the VE. Id. at 18–19, 48–51.

More importantly, when Rosario's attorney asked the VE whether his opinion would change if the person described in the hypothetical had a weak tolerance for day to day work pressures, such as production demands and schedules, the VE answered in the affirmative. Record, at 53–54. Specifically, the VE said that he would have some concerns over whether such a person would be able to perform even the two jobs that he stated originally. Id. at 54–55.

Therefore, the court disagrees with the Secretary's contention that the ALJ's decision is supported by substantial evidence. It is well settled that a hypothetical question which does not reflect all of a claimant's impairments is improper and any response thereto cannot be considered substantial evidence. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984); *Wallace v. Secretary, HHS*, 722 F.2d 1150, 1155 (3d Cir.1983). The Secretary errs in assuming that since the ALJ's hypothetical question addressed Rosario's need to work in a "low stress" job, that it adequately addressed Rosario's deficiencies in concentration. While, arguably, these factors may be similar, they cannot be viewed as the same.

Fundamentally, in view of the medical evidence and the VE's response to the hypothetical of Rosario's attorney, the ALJ has not satisfied her burden of showing that there were any jobs that could be performed by the claimant. Consequently, the motion of Rosario for summary judgment is granted.

An appropriate order follows.

## ORDER

AND NOW, this 17th day of September, 1993, upon consideration of the parties' cross motions for summary judgment, it is hereby ORDERED that plaintiff's motion is GRANTED and that defendant's motion is DENIED.