Elizabeth RAMIREZ, Plaintiff,

v.

Jo Anne BARNHART, Commissioner, Social Security Administration, Defendant.

No. CIV.A.02–2696.

United States District Court, E.D. Pennsylvania.

June 3, 2003.

Thomas D. Sutton, Leventhal & Sutton, Langhorne, PA, for Elizabeth Ramirez, Plaintiff.

Nicholas Cerulli, Social Security Administration, Office of the General Counsel, Philadelphia, PA, for Jo Anne B. Barnhart, Commissioner of SSA, Defendant.

## MEMORANDUM

ROBRENO, District Judge.

This is an appeal from a final decision of the Commissioner of the Social Security

Administration denying plaintiff Elizabeth Ramirez's claim for supplemental security income (SSI) and disability insurance benefits (DIB). Before the court are the parties' cross-motions for summary judgment. Also before the court are the Report and Recommendation of Magistrate Judge Charles B. Smith recommending remand, and defendant's objection to that Report and Recommendation.

The Magistrate Judge recommended that the instant case be remanded on a single ground, namely that the main hypothetical posed by the ALJ to the vocational expert was deficient because it did not include the ALJ's finding, stated in his psychiatric review technique form (PRTF), that Ramirez "often" experiences "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner." The defendant has objected only to this aspect of the Report and Recommendation. For the reason that follow, the court will adopt as the decision of the court those portions of the Report and Recommendation to which no objection was raised, but will disapprove the Magistrate Judge's recommendation to the extent that it urges remand on the above grounds. Therefore, summary judgment will be granted in favor of the defendant and against the plaintiff.

I. RELEVANT FACTS [1]

At the time that she filed an application for disability benefits, Elizabeth Ramirez was a 42 year old woman suffering from severe Grave's disease, chronic obstructive pulmonary disease, anxiety-related disorder and personality disorder. In the course of assessing the severity of Ramirez' claimed mental impairments, the ALJ reviewing her claim for disability ben-

efits completed a Psychiatric Review Technique Form, on which he indicated that, based on the record, Ramirez "often" experienced "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)." Record at 28.

Based on his findings as to Ramirez's physical and mental limitations, the ALJ, attempting to assess Ramirez's residual functional capacity, posed the following hypothetical to the vocational expert at Ramirez's hearing:

> I will begin by asking you to assume that we're talking about an individual of Ms. Ramirez's age, education and prior work history. And I'd like you to further assume that this individual's capable of performing a range of sedentary work. The work should be performed in a well ventilated facility, with no exposure to dust, fumes, pets, animals, chemicals, or temperature extremes. The work should provide for occasional breaks, for the individual use of an inhaler or pump. The work should involve simple one to two step tasks. The work should not require the individual during the course of performing the work to travel outside of the workplace. And ... the work setting should provide reasonable opportunity for the individual to make and receive personal phone calls. Within the boundaries of these limitations, ... are there jobs in the regional or national economy that the individual could perform?

Record at 457–58. The vocational expert's response to this hypothetical, which did not reflect the ALJ's finding on the PRTF form that Ramirez often suffered deficien-

---

**1.** With the exception of the facts stated in this section, the court adopts by reference the account of the facts, procedural posture, and summary of the record contained in the Magistrate Judge's Report and Recommendation.

cies in concentration, persistence or pace, formed the basis of the ALJ's conclusion that Ramirez was capable of performing a "significant number" of jobs existing in the national economy. Record at 23.

## II. DISCUSSION [2]

Social Security regulations provide for a five-step sequential evaluation process for determining whether a claimant qualifies for disability benefits. *Thomas v. Comm'r of Soc. Sec.,* 294 F.3d 568, 571 (3d Cir. 2002). Through this process, an ALJ must evaluate: (1) the claimant's current work activity, (2) the severity of the claimant's impairments, (3) whether the claimant's impairment or impairments · meets or equals any listing set out in Appendix 1, (4) whether the claimant's residual functional capacity allows him to perform his past relevant work, and (5) whether the claimant's specific residual functional capacity, in conjunction with a consideration of age, education, and work experience, prevents the claimant from performing work which exists in the national economy. *See* 20 C.F.R. §§ 404.1520; 416.920.

A psychiatric review technique form of the type at issue in this case contains a series of broad questions aimed at guiding the ALJ's evaluation of the severity of a claimant's mental impairments, an inquiry directly implicated at steps 2 and 3 of the disability determination process. *See* 20 C.F.R. § 404.1520a. To this end, the form contains a section captioned "functional limitation and degree of limitation," in which the ALJ indicates, by checking off the appropriate box, the extent to which, based on substantial evidence in the record, a claimant experiences four general types of limitations: (1) restrictions of activities of daily living, (2) difficulties in maintaining social functioning, (3) deficien-

cies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere), and (4) episodes of deterioration or decompensation in work or work-like settings. *See, e.g.,* Record at 28. The PRTF does not indicate any specific work-related activities that the claimant will have difficulty performing.

The issue in this case is whether an ALJ who states on his PRTF form that a claimant suffers from deficiencies in concentration, persistence or pace must include that finding as part of the hypothetical posed to the vocational expert evaluating a claimant's residual functional capacity to work at step 5 of the sequential disability determination. The circuits have divided on this question. *Compare Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996) ("Any hypothetical ... should include [the claimant's] deficiencies of concentration, persistence, or pace so that the vocational expert might accurately determine his ability to work.") *with Yoho v. Comm'r of Soc. Sec.,* 168 F.3d 484, 1998 WL 911719, at *3 (4th Cir.1998) ("There is no obligation ... to transfer the findings on the PRTF verbatim to the hypothetical questions [posed to the vocational expert].").

◼ Although Third Circuit has not yet spoken to the particular issue presented in this case, the standards by which the sufficiency of a vocational expert's testimony is to be judged are well established. "[T]he vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984). In other words,

---

**2.** As noted above, the court adopts the Magistrate Judge's recommendations with respect

to all of plaintiff's arguments, save· the one that is the subject of the instant objection.

"the expert must have evaluated claimant's particular impairments as contained in the record." *Id.* To this end, the Third Circuit has emphasized that "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987).

In the instant case, Ramirez contended that the hypothetical posed to the vocational expert in her case failed to reflect all of her impairments because it did not incorporate the ALJ's findings in the PRTF form that she often experienced deficiencies in concentration, persistence or pace, and thus could not be considered substantial evidence on the record to support the ALJ's determination that she retained the residual capacity to work. The Magistrate Judge agreed, and the Commissioner objected as set forth below.

3. Plaintiff attempts to prevent the Commissioner from presenting this argument to the court by reference to Local Rule 72.1 IV(c), which requires that "[a]ll issues and evidence and evidence shall be raised to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate's Report and Recommendation." Local R. Civ. P. 72.1 IV(c). Plaintiff's argument is, in substance, that the Commissioner failed to argue in her summary judgment motion that SSR 96–8p, as a ruling issued by the Social Security Administration, is due substantial deference under the Supreme Court's recent decision in *Barnhart v. Walton,* 535 U.S. 212, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002), and should now be foreclosed from making that argument to the district court. The court does not agree.

The Commissioner's motion for summary judgment specifically raises the issue of the applicability of SSR 96–8p. *See* Def.'s Brief in Support of her Mot. for Summ. J. at 28 ("A PRTF does not constitute a finding as to

### A. The Role of SSR 96–8p

In her sole objection to the Magistrate Judge's Report and Recommendation, the Commissioner argues, in light of the absence of Third Circuit caselaw directly on point, that the issue is controlled by SSR 96–8p, which "state[s] the Social Security Administration's policies and policy interpretation regarding the assessment of [a claimant's] residual functional capacity (RFC) in initial claims for disability benefits," SSR 96–8p, 1996 WL 374184, at *1 (S.S.A. Jul. 2, 1996), and that the Magistrate Judge erred in not deferring to the agency position purportedly reflected in this provision.[3] For the reasons that follow, the court does not agree.

By its own terms, SSR 96–8p "clarifies" the term "Residual Functional Capacity" ("RFC"), which is implicated at steps 4 and 5 of the disability determination, and "discusses the elements considered in the [RFC] assessment." *Id.* The Ruling states in relevant part:

Plaintiff's mental residual functional capacity ... [SSR] 96–8p provides that a PRTF is not a residual functional capacity finding ... A PRTF is used at steps two and three of the evaluation process ...."). As the issue was placed before the Magistrate Judge, it is also properly before the court. *See* Local R. Civ. P. 72.1 IV(c).

That the Commissioner did not cite *Walton* in her motion for summary judgment does not preclude her from doing so now in an objection. It is true that, as a matter of practice, the Commissioner should probably have set forth for the Magistrate Judge the appropriate level of deference due social security rulings. However, under the circumstances of this case, the Commissioner's failure to cite that case by way of background in her summary judgment motion should not foreclose her ability to use it to complain of error upon discovering that the Magistrate Judge had not accorded the ruling any deference whatsoever, and, indeed, had made no mention of 96–8p, the crux of her argument, in the Report and Recommendation.

The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria [of the adult mental disorders listings] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

*Id.* at *4. The Commissioner contends that, in light of this Ruling, "[i]t is beyond question that the Commissioner has affirmatively established a policy that a PRTF is used solely to rate the severity of a mental impairment at steps two and three of the sequential evaluation process," Def.'s Objections to the Report and Recommendation of the Magistrate Judge at 3, and that therefore, a hypothetical posed to a vocational expert at step five of the inquiry need not include the ALJ's findings regarding the severity of the claimant's mental impairment reflected on a completed PRTF form.[4] The court does not agree that SSR 96–8p is controlling on this issue.

A plain meaning reading of SSR 96–8p does not support the interpretation of the breadth and application now proposed by the Commissioner. First, the Ruling does not, by its terms, apply to hypothetical questions posed to a vocational expert, because it contains no reference to the role of the vocational expert in an assessment of residual functional capacity. Second, the Ruling does not articulate in sweeping terms that the PRTF completed at step three of the disability inquiry is wholly irrelevant to any part of the step five inquiry. Rather, SSR 96–8p contains very limited language. It addresses itself only to the adjudicator, and not to a broader audience. *See* SSR 96–8p, 1996 WL 374184, at *4 ("The adjudicator must remember ....").  Moreover, it states only that "the limitations [contained in the PRTF] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 ... requires a more detailed assessment by itemizing various categories ... summarized on the PRTF." *Id.*

An examination of the context in which the ALJ makes his disability determination reveals the reason for the provision's narrow scope, namely that SSR 96–8p was intended not to articulate a sweeping policy separating steps two and three from steps four and five, but rather to protect the ALJ from a particular potential source of error and confusion. The PRTF completed at step 3 contains a "functional limitation and degree of limitation" section in which the ALJ is required to assess the severity of a claimant's impairment by indicating in four broad areas (namely (1) daily activities, (2) social functioning, (3) concentration, persistence or pace, and (4) decompensation) the frequency with which a claimant experiences some form of unspecified limitation or restriction.

---

4. This is a position recently endorsed by the Fourth Circuit. *See Furst v. Comm'r of Soc. Sec.,* 208 F.3d 213, 2000 WL 282909, at *2 (6th Cir.2000) (concluding that "the ALJ's findings regarding the PRTF are solely relevant to the issues of whether [a claimant] had a severe impairment and whether [his] condition was equivalent to any [listed impairments] ...." such that a hypothetical posed to a vocational expert at step five of the inquiry need not reflect the findings of the ALJ in the PRTF form).

By contrast, when an ALJ reaches step five of the disability inquiry, and must assess the claimant's residual functional capacity to work, "the ALJ must translate the information contained in the PRTF into specific work-related limitations and restrictions." *Hubbard–Davis v. Chater*, No. 95–C–5556, 1996 WL 386554, at *4 (N.D.Ill. July 5, 1996), *rev'd on other grounds sub nom. Hubbard–Davis v. Callahan*, No. 96–4202, 124 F.3d 204, 1997 WL 407742 (7th Cir.1997). Therefore, as a required part of the step five inquiry, the ALJ must complete, in the case of a claimant with mental impairments, a Mental Residual Functional Capacity Assessment ("MRFC"), a checklist which "specifically identifies the claimant's abilities and limitations, and contains work related information that the PRTF does not reveal" based on the accumulated medical and other evidence in the record. *Id.*[5]

In this context, it is clear to the court that SSR 96–8p seeks to protect against the possibility that an ALJ might mistakenly rely on the PRTF as an indicator of residual functional capacity, rather than of the existence of a severe mental impairment, and thus fail to evaluate residual functional capacity with the requisite detail. In other words, SSR 96–8p establishes only that the PRTF form is not a substitute for a residual functional capacity assessment that reflects full consideration of the areas of work limitations reflected on the MRFC form. Therefore, the court concludes that SSR–8p does not support the Commissioner's proposed bright line that the PRTF form is irrelevant to any aspect of the step five inquiry, and does not provide persuasive authority[6] as to

5. An example immediately relevant to this case reveals the difference between the two inquiries at issue. The PRTF form used at step three requires the ALJ to indicate whether a claimant experiences "Deficiencies of Concentration, Persistence or Pace" never, seldom, often, frequently or constantly. *See* Record at 28. By contrast, the MRFC used at step five requires the ALJ to indicate whether a claimant is not significantly limited, moderately limited, or markedly limited with respect to eight specific questions bearing on the claimant's difficulties in the area of "sustained concentration and persistence," namely the ability to (1) carry out very short and simple instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) sustain an ordinary routine without special supervision, (6) work in coordination with or proximity to others without being distracted by them, (7) make simple work-related decisions, and (8) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See* Record at 82.

6. Interpretive rules, i.e., "statements made by an agency to give guidance to its staff and affected parties as to how the agency intends to administer a statute or regulation," *Daughters of Miriam Ctr. for the Aged v. Mathews*, 590 F.2d 1250, 1258 (3d Cir.1978), are "not entitled to the same deference as norms that derive from [an agency's] delegated lawmaking powers … [but] are still entitled to some weight on judicial review." *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 157, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (referring to both interpretive rules and enforcement guidelines). Thus, although "such statements do not have the force of law, … they may have the 'power to persuade.'" *Sykes v. Apfel*, 228 F.3d 259, 271 n. 14 (3d Cir.2000) (citing *Christensen v. Harris County*, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (noting that, although informal rules are not controlling on the courts, they nonetheless "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance" and that "[t]he weight of such a judgment … will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those fac-

whether hypotheticals posed to the vocational expert at step five are required to reflect the specific contents of the PRTF assessment completed at step three.

### B. The Content of the Hypothetical Question

1. *The hypothetical need not contain the ALJ's specific PRTF findings where the question reflects all impairments supported by the record.*

The Magistrate Judge, who did not mention in his Report and Recommendation the Commissioner's arguments concerning SSR 96–8p, predicted that the Third Circuit would require an ALJ to incorporate his PRTF findings in hypotheticals posed to the vocational expert. This conclusion was based primarily on *Rosario v. Shalala,* 836 F.Supp. 257 (E.D.Pa.1993) (Giles, J.), in which the court identified the ALJ's failure to include his PTRF finding that the claimant suffered from deficiencies of concentration, persistence or pace in the hypothetical question posed to the vocational expert as one reason that the ALJ's decision was not supported by substantial evidence. *Id.* at 262; *see also Davis v. Sec'y of Health and Hum. Servs.,* 1995 WL 351093, at *6–7 (M.D.Pa. Mar. 21, 1995) (applying *Rosario* and concluding that "[a]n identical conclusion is compelled here [b]ecause the hypothetical questions posed to the vocational expert did not accurately portray [the claimant's] ... mental impairments ....").

Respectfully, the court finds that the standards articulated by the Third Circuit do not mandate that the ALJ articulate verbatim to the vocational expert the findings recorded on the PRTF form. In neither of the seminal cases in the area does the Third Circuit enumerate any specific information that an ALJ is required to provide to a vocational expert in every case. Rather, the inquiry into whether the question posed is sufficient to elicit a response that could constitute substantial evidence on the record of a claimant's residual capacity to work is inherently a flexible one: "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record." *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987); *see also Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984) (noting that the question must "accurately portray[ ] the claimant's individual physical and mental impairments ... Thus, the expert must have evaluated claimant's particular impairments as contained in the record"). Thus, the applicable analysis is not whether the question that the ALJ posed to the vocational expert reflected the ALJ's findings at step three of the disability inquiry, but rather whether, under the circumstances of this particular case, it reflected all of Ramirez's impairments that were supported by the record as a whole. Therefore, the court concludes that the ALJ did not err in declining to include in the hypothetical posed to the vocational expert his own findings on the PRTF form that Ramirez "often" suffered from "deficiencies in concentration, persistence or pace," and finds that, contrary to the Magistrate Judge's recommendation, remand of the matter is not warranted.

2. *The hypothetical in the instant case reflects all of the evidence in the record of Ramirez's mental impairments.*

The court finds that the hypothetical posed to the ALJ in this case meets the standards established by the Third Circuit. A comparison of the instant case to the recent disposition in *Burns v. Barnhart,* 312 F.3d 113 (3d Cir.2002) is instructive.

tors which give it power to persuade, if lacking the power to control").

In *Burns*, finding insufficient a hypothetical limiting a claimant to "simple repetitive one, two-step tasks" because it failed to reflect the limitations caused by the claimant's borderline intellectual functioning, *id.* at 123, the Third Circuit emphasized that the phrase used by the administrator "[did] not specifically convey [the claimant's] intellectual limitations referenced in [a consulting psychiatrist's] report." *Id.* (noting that the phrase "could refer to a host of physical and mental limitations, such as a person's mechanical or small motor skills, his lack of initiative or creativity, or a fear of, or unwillingness to take on, unfamiliar tasks," and concluding that "[w]hile the phrase could emcompass a lack of intelligence, it does not necessarily incorporate all of the borderline aspects ... identified in [the psychiatrist's] report").

■ In sharp contrast with the question asked in *Burns*, given the information in the record, the question posed by the ALJ in the instant case reflected the full content of the medical evidence on the record regarding Ramirez's limitations.[7] Among the relevant limitations listed in the hypothetical posed to the vocational expert was the requirement that "[t]he work should involve simple one to two step tasks ... [and] should not require the individual during the course of performing the work to travel outside of the workplace." Record at 458. This description of Ramirez's limitations resulting from her mental impairments accurately reflects the evidence contained in the record. *See* Record at 82–83 (medical consultant indicating on MRFC Assessment that Ramirez was moderately limited as to her ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, and (3) travel in unfamiliar places or use public transportation); Record at 442 (testimony of medical expert psychiatrist Dr. Herman Rudnick that "the place had to be relatively easy for her to get to and a place that would not make marked demands on her, in terms of complicated or complex kinds of issues to do things. She'd have to do things that would be relatively simple"). Thus, the hypothetical posed by the ALJ to the vocational expert in the instant case was sufficient to elicit a response that served as substantial evidence on the record of Ramirez's residual capacity to work.[8]

---

7. As the Commissioner points out in her objection, the facts of this case make it akin to the Eighth Circuit's decision in *Howard v. Massanari*, 255 F.3d 577 (8th Cir.2001), despite the Magistrate Judge's attempt to distinguish it on its facts. In light of the court's determination that the result in this case is dictated by the reasoning articulated by the Third Circuit in *Burns*, however, the Commissioner's objection is irrelevant, even though well-placed.

8. The Commissioner objects to the opinion of the Magistrate Judge, contained in a footnote to the Report and Recommendation, that the hypothetical posed to the vocational expert should have reflected that Ramirez' ability to perform simple, repetitive tasks was dependent on other factors, such as the location of the job, its proximity to her children and how "supportive" it is. Report and Recommenda-

tion at 43 n. 16. Upon examination of the record, the court concludes that the enumeration suggested by the Magistrate Judge is unnecessary, and that the hypothetical posed to the vocational expert in this case adequately reflects the areas of concern in this case.

Dr. Rudnick testified as follows with respect to Ramirez's ability to complete simple, repetitive tasks:

[O]ne major problem, it would depend on where the work would be, the proximity to where her children would be. Not so much a question of what she could do, but her need to feel that she has to be reasonably protective of her children. If its' a situation where she's able to be in contact, say, to feel that everything is safe in her home, then ... she could operate in doing things. But, if it becomes overwhelming, that it would be a place where she couldn't ...

## III. CONCLUSION

For the foregoing reasons, the court disapproves the Magistrate Judge's Report and Recommendation insofar as it recommended remand on the ground that the ALJ had failed to include his PRTF findings in his hypothetical question to the vocational expert. In all other respects, the court approves the Magistrate Judge's Report and Recommendation in all other respects. Accordingly, summary judgment will be granted in favor of defendant Jo Anne Barnhart and against plaintiff Elizabeth Ramirez.

An appropriate order follows.

## *JUDGMENT*

**AND NOW,** this **3rd** day of **June, 2003,** it is hereby **ORDERED** that **JUDGMENT** is **ENTERED** in favor of defendant Jo Anne Barnhart and against plaintiff Elizabeth Ramirez.

**AND IT IS SO ORDERED.**

## *ORDER*

**AND NOW,** this **3rd** day of **June, 2003,** upon consideration of the pleadings and the record herein, and after review of the Report and Recommendation of United States Magistrate Judge Charles B. Smith, defendant's objections, and plaintiff's response to defendant's objections, it is hereby **ORDERED** that:

1.  The Report and Recommendation is **APPROVED in part and DISAPPROVED in part.**

2.  The plaintiff's motion for summary judgment (doc. no. 10) is **DENIED.**

3.  The defendant's motion for summary judgment (doc. no. 11) is **GRANTED.**

**AND IT IS SO ORDERED.**

have any contact or be able to make a call or leave . . . I think that would have to be a stressor that would have to be worked out . . . But, she needs several factors to help her diminish her anxiety. So, again, it depends upon where it is and how supportive she could be in such a job.
Record at 452. In keeping with these considerations, the ALJ directed the vocational expert to consider only work that would "provide reasonable opportunity for the individual to make and receive personal phone calls." Record at 458. Thus, the court concludes that the hypothetical posed by the ALJ at Ramirez's hearing reflects the evidence of Ramirez's impairments.