**Robert PAYTON, for Mary Payton, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A. 05–4494.**

United States District Court, E.D. Pennsylvania.

Feb. 24, 2006.

**386**

Eric J. Fischer, Esquire, Elkins Park, PA, for Plaintiff.

Joyce M.J. Gordon, Esquire, Social Security Administration, Philadelphia, PA, for Defendant.

## *MEMORANDUM & ORDER*

KATZ, Senior District Judge.

Plaintiff Mary Payton (deceased) has brought this action against Defendant Jo Anne Barnhart, in her official capacity as Commissioner of the Social Security Administration, seeking judicial review of an administrative Social Security disability insurance benefits, pursuant to 42 U.S.C. § 405(g).[1] Plaintiff claims that the ALJ's finding that the claimant was not disabled between June 1, 2001 and September 20, 2001("closed period") was unsupported by substantial evidence and, therefore, must be reversed. Now before this court are the parties' cross motions for summary judgment. For the reasons set forth below, the Plaintiff's Motion is granted and the Defendant's Motion is denied.

## I. Background

Plaintiff had a long history of depression spanning more than a decade and had been hospitalized numerous times for de-

pression, as well as drug and alcohol dependence. In October 2001, her family physician diagnosed Depression and prescribed Zoloft. When Plaintiff's symptoms did not improve, she sought treatment from a psychiatrist and underwent an "Initial Clinical Assessment & Psychiatric Evaluation" at the Wedge Medical Center in Philadelphia on October 1, 2001. At that time, she was diagnosed with bi-polar disorder.

In addition to her depression, Plaintiff also reported that she suffered significant joint pain in her hands, shoulders, knees, and ankles, which limited her ability to walk, bend, reach for and handle objects. She had not engaged in substantial gainful activity since June 1, 2000, her alleged disability onset date.

Plaintiff began the lengthy process of trying to obtain disability benefits on July 26, 2000, when she filed protectively for Supplemental Security Income–Disability benefits and Social Security disability insurance benefits, alleging that she suffered from severe depression and joint pain. Plaintiff's claims were initially denied and appealed to the administrative hearing level. After an administrative hearing was held on August 6, 2001, the ALJ issued a partially favorable decision, finding that Plaintiff's depression was a severe impairment after October 1, 2001, but not for the period, between June 1, 2000 and September 30, 2001.

Although this decision was partially favorable to Plaintiff, she nonetheless contends that the unfavorable portion of the ALJ's finding should be reversed. For the reasons set forth below, this court agrees.

---

1. Ms. Payton passed away during the lengthy appeals process. Robert Payton, her son, is the substitute party. He is eligible only to inherit her Social Security disability benefits. Because of Plaintiff's intervening death the Appeals Council dismissed the SSI claim because such benefits can only be inherited by a surviving spouse, and Plaintiff was not married at the time of her death.

## II. Discussion

■ In reviewing an administrative decision denying benefits in a social security matter, this court must uphold any factual determination made by the ALJ supported by "substantial evidence." 42 U.S.C. § 405(g). While substantial evidence is "more than a mere scintilla," it is not "a large or significant amount of evidence." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations and quotations omitted); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Rather, it is such relevant evidence that would be sufficient to support a reasonable conclusion. *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541. In addition to having substantial evidence review of an ALJ's findings of fact, this court retains plenary review over the ALJ's application of legal principles. *Krysztoforski v. Chater,* 55 F.3d 857, 858 (3d Cir.1995). As such, even if a decision made by an ALJ is supported by substantial evidence, this court can overturn that decision if it finds that it was based upon incorrect legal standards. *Friedberg v. Schweiker,* 721 F.2d 445, 447 (3d Cir.1983).

The Social Security Administration has promulgated a five-step sequential evaluation process for an ALJ to determine whether or not a Plaintiff qualifies as disabled under the Social Security Act. According to this process, an ALJ must consider (1) current work activity, (2) the severity of the impairments, (3) whether the impairments meet or are functionally equivalent to the listed impairments, (4) residual functional capacity, and (5) the ability to perform work available in the national economy. 20 C.F.R. § 416.920.

Here, the ALJ erred in the Step Two assessment by finding that Plaintiff's depression was not a severe impairment until October 1, 2001. The record demonstrates that Plaintiff's depression was as severe prior to October 1, 2001 as it was after.

### A. Step Two: Severity of Impairment

■ The central issue in this case is whether the ALJ determined the proper date of the onset for Plaintiff's depression. Here, the ALJ's conclusion that Plaintiff's depression did not become a severe impairment until she underwent a psychiatric evaluation at the Wedge Medical Center on October 1, 2001 is inconsistent with the medical record and not supported by substantial evidence.

### 1. Medical Evidence Is Inconsistent with the October 1, 2001 Onset Date

In this case, the ALJ erred because the medical evidence does not support his conclusion that Plaintiff's date for onset of disability was October 1, 2001. "In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available." *Walton v. Halter,* 243 F.3d 703, 708 (3d Cir.2001). "However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.*

In this case, the medical evidence of record is inconsistent with the ALJ's determination of the October 1, 2001 onset date. The psychiatric evaluation does not support the conclusion that Plaintiff's bipolar suddenly emerged or that her condition suddenly deteriorated on October 1, 2001, as necessarily presumed by the ALJ's findings. To the contrary, the evaluation demonstrates a severe impairment prior to the examination. The evaluation states:

> 51 yo divorced BF [with][Mental Health] since '89 referred to Wedge through Dr. Kim, her PCP for evaluation and treatment. *Dr. Kim has been treating [patient] for past year. Both*

*she and the Dr. [feel] her depression is not improving,* with recent appetite [loss], lost 15 lbs over six months, problem [with] midmorning awakening, tired during the day, crys [sic], unmotivated, hypoanhedonia, hopelessness, doubts cc. about need to continue [with] life but lets go because of grandchildren—*these* [sic] *level of emotional abyss had been occurring for many years,* ongoing severe anemia, rheumatoid arthritis (daily basis).

Record at 248 (emphasis added).

Notably, the evaluation notes that "her depression is not improving,"and that this "level of emotional abyss had been occurring for many years." *Id.*

Moreover, comparison of notations from an October 18, 2000 medical exam with the October 1, 2001 psychiatric exam bolsters the conclusion that Plaintiff's depression did not suddenly become a severe impairment on October 1, 2001. On October 18, 2000, an examining physician diagnosed "depression, insomnia and [decreased] appetite"—the same symptoms diagnosed by the psychiatrist in the October 1, 2001 psychiatric evaluation. *Compare* Record at 227 *with* record at 248. Also, notably, Plaintiff was reportedly hospitalized for depression in April of 2000. Record at 227. Therefore, the medical evidence of record suggests that she suffered the same impairments from her depression before October 1, 2001 as after.

*2. Plaintiff's Depression Imposed Significant Restrictions*

The ALJ further erred when he concluded that Plaintiff's depression did not cause limitations that "imposed significant restrictions in her ability to perform basic work activities" until after October 1, 2001. There is no basis in the record to differentiate between the symptoms Plaintiff suffered prior to the psychiatric evaluation and those she suffered subsequent to evaluation.

An impairment is severe if it imposes significant restrictions in the ability to perform basic work activities. Social Security Ruling 85–28. "[A]n impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Id.* "The severity step...should only be used to screen out *de minimis* claims." *Roberts v. Massanari,* 2001 WL 1580241, *3–4 (E.D.Pa., Dec. 10, 2001)(citing *Bailey v. Sullivan,* 885 F.2d 52, 56–7 (3d Cir.1989)).

In this case, the evidence establishes that Plaintiff met this *de minimis* level. The ALJ correctly noted that the Plaintiff faced several functional limitations in support of his conclusion that Plaintiff's depression was a severe impairment after October 1, 2001. Specifically, in finding the depression to be a severe impairment after October 1, the ALJ noted that Plaintiff 1) cannot concentrate; 2) has difficulty sleeping; 3) lives with her parents, and her mother does her cooking shopping and laundry; 4) has three to four bad days a week, where she can do nothing and stays in bed; 5) is prescribed [anti-depression medication]. Record at 24. Notably, the record demonstrates that all the functional limitations noted by the ALJ as evidence of severe impairment after October 1, 2001 date back to Plaintiff's alleged date of disability onset.

First, Plaintiff's inability to concentrate dated back to her claimed onset date. Plaintiff testified that her depression significantly affected her ability to concentrate. Record at 268. ("Well, I can't concentrate much. I'm trying to pay attention to something. I lose what I was paying attention to."). Plaintiff further testified that one of the factors that disabled her was stress and her inability to

concentrate on her job. *See* Record at 263 ("It was stress and I, you know, I couldn't concentrate on my job."). Thus, the evidence shows that this inability to concentrate as a result of depression, which limited her ability to work, dated back to the time when Plaintiff had a job, long before October 1, 2001.

Second, the Plaintiff suffered from sleeplessness prior to the October 1, 2001 psychological evaluation. At the hearing, Plaintiff testified that from as early as June 1, 2000 until the time of her psychiatric evaluation she would wake up at approximately 3:00 a.m. Record at 271. Moreover, notations from an October 18, 2000 medical diagnosed "Insomnia." Additionally, in August 1, 2000, she reported having regular sleep problems to the Defendant. *See* Record at 96. Therefore, the record demonstrates that she suffered from sleeplessness from the time of her alleged onset date.

Third, Plaintiff began living with her parents in November 2000. *See* Record at 273 (stating that Plaintiff last lived by herself almost a year prior to the hearing, which occurred on November 6, 2001). Therefore, she was living with her parents and relying on them to assist her with her daily activities prior to the onset date determined by the ALJ.

Fourth, the reason that Plaintiff decided to live with her parents was because she was having "days where [she] [couldn't] get out of the house." Thus, it is logical for the court to infer that the "bad days where she could do nothing" to which the ALJ refers began sometime before November, 2000, long before the October 1, 2001, evaluation.

Finally, Plaintiff took the anti-depressant medication, Prozac, as prescribed by her physician during the June 1, 2000 to September 31, 2001 period.

Therefore, the evidence establishes that the functional limitations that the ALJ used to conclude that her depression was a severe impairment after October 1, 2001, were present to the same degree during the closed period. Logically then, her depression was a severe impairment during the closed period, as well.

It seems then that the sole support for ALJ's position that the Plaintiff did not suffer from severe impairment prior to the October 1, 2001 evaluation seems to be a "non-examining" State Agency "checklist." Record at 24 (finding that the "state agency noted that the Plaintiff had no severe mental impairment."). In this case, this State Agency checklist is not substantial evidence that Plaintiff's depression did not arise before October 1, 2001. *See Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir.1984)(holding that the "ALJ's reliance on this report must be considered in light of this court's conclusion that the opinion of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if [the doctor] had treated or examined him."). Here, the checklist was completed early in the review process while the record was still fragmentary. Moreover, this checklist was filled out on November 20, 2000, approximately ten months before the date where the ALJ deems the depression to have become "severe." Hence, this checklist is not substantial evidence that Plaintiff's depression was not severe until October 1, 2001. Therefore, for the reasons stated above, the court finds that the ALJ's determination that Plaintiff's depression was not a severe impairment until October 1, 2001 is not supported by substantial evidence.

*B. Reversal Rather Than Remand is Appropriate*

■ Reversal rather than remand is appropriate in this case. "The decision to

direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris,* 745 F.2d 210, 221–222 (3d Cir.1984). Such is the case here.

For the reasons stated above, substantial evidence indicates that Plaintiff was disabled and entitled to benefits for the "closed period." The record demonstrates the Plaintiff's depression was as disabling prior to the October 1, 2001, evaluation as it was after. Thus following ALJ's analysis of Steps Three through Five, the Plaintiff was disabled starting in June 1, 2000. Reversal rather than remand is appropriate in this case.

An appropriate Order follows.

### ORDER

**AND NOW,** this 24th day of February, 2006, upon consideration of the parties' cross motions for summary judgment, it is hereby **ORDERED** that Plaintiff's Motion is **GRANTED** and Defendant's Motion is **DENIED.** Thus, Defendant's denial of benefits for the period from June 1, 2000 through September 30, 2001 is **VACATED** and **REVERSED.** This case is **RE-MANDED** to the Commissioner for calculation and payment of awards and benefits due to Plaintiff.