Monique **REESE**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security Administration.[1]**

**Civil Action No. 12–6660.**

United States District Court, E.D. Pennsylvania.

May 24, 2013.

---

1. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is sub-stituted for Michael J. Astrue as the defendant in this suit.

Jonathan M. Stein, Community Legal Services, Inc., Robert J. Lukens, Philadelphia, PA, for Monique Reese.

M. Jared Littman, Roxanne Andrews, Social Security Admin., Philadelphia, PA, for Carolyn W. Colvin.

### ORDER

JUAN R. SÁNCHEZ, District Judge.

AND NOW, this 24th day of May, 2013, upon careful and independent consideration of Plaintiff Monique Reese's Brief and Statement of Issues in Support of Request for Review, Defendant's response thereto, and Reese's reply, and after careful review of the Report and Recommendation of United States Magistrate Judge Timothy R. Rice, to which no objections have been filed,[2] it is ORDERED:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. Reese's request for review is GRANTED; and

3. The matter is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further review consistent with the Report and Recommendation.

### REPORT AND RECOMMENDATION

TIMOTHY R. RICE, United States Magistrate Judge.

Following an abusive childhood, and rapes at ages 15 and 20, Monique Reese's life devolved into a spiral of substance abuse, attempted suicide, depression, and homelessness. *See, e.g.,* R. at 418 (July 6, 2009 mental health intake summary). Reese's extensive history of severe physical and mental illness prompted a clinical psychologist who examined her in 2009 to conclude that Reese was unable to function effectively on a daily basis in the workforce. *Id.* at 272–77. An Administrative Law Judge (ALJ) nevertheless denied Reese's application for Supplemental Security Income (SSI), asserting the examining psychologist had exaggerated Reese's symptoms. *Id.* at 16.

The uncontested record belies the ALJ's rationale. The ALJ's decision was not supported by substantial evidence because she improperly relied on a reviewing psychological consultant, and failed to acknowledge that Reese's extensive history of mental health problems impaired her ability to function in the workforce. Accordingly, I respectfully recommend that Reese's request for review be GRANTED and the case be remanded for a full consideration of the evidence in light of the examining psychologist's assessment.

---

2. The Report and Recommendation was sent to all parties of record on May 3, 2013. Pursuant to Local Civil Rule 72.1 IV(b), a party may object to a magistrate judge's report "within fourteen (14) days after being served with a copy thereof." As of today's date, no objections have been filed.

## PROCEDURAL HISTORY

The ALJ heard testimony on September 29, 2011, and denied Reese's claim on October 15, 2011. Applying the five-step sequential analysis,[1] the ALJ found Reese had the following severe impairments: back disorder, right shoulder tendonitis, chronic obstructive pulmonary disease, psychological disorders, including affective disorders, post-traumatic stress disorder, and cocaine, alcohol, and marijuana dependency. Although Reese's physical impairments were largely uncontested, the ALJ was faced with two conflicting psychological reports concerning Reese's mental impairments.[2]

Janet Horwitz, Psy.D, made extensive findings based on her examination of Reese and a review of her medical records.[3] Horwitz found Reese had marked or extreme restrictions in all areas of mental functioning. *Id.* at 278–79. She noted that Reese is quite compromised in managing a daily routine given the extent of her depression, her anxiety, poor frustration tolerance, poor concentration, attention and short memory as well as significant paranoid ideation in relation to others which prevents her from going outside. *Id.* at 276. Horwitz concluded Reese would not be able to relate appropriately with others in any setting. *Id.*

Mark Hite, a reviewing consultant, concluded otherwise. Without examining Reese, Hite branded Horwitz' opinion as an overestimate of the severity of the claimant's functional limitations, and discounted it as unsupported by the medical evidence. *Id.* at 295–96. Hite found Reese suffered no limitations in mental functioning, except for moderate limitations in four areas: carrying out detailed instructions; understanding and remembering detailed instructions; interacting appropriately with the general public; and responding appropriately to changes in the work setting.[4] *Id.* at 293–94.

The ALJ adopted Hite's assessment, finding Reese retained the RFC to perform a modified range of sedentary unskilled work, but limited to only routine and repetitive tasks. The ALJ further limited Reese to work that involved no frequent independent decision making, no frequent work setting changes, no public interaction, and occasional interaction with

1. For this analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has one or more severe impairments, which significantly limit her ability to perform basic work; (3) has impairments that meet or equal the criteria associated with impairments in the Social Security Regulations so as to mandate a disability finding; (4) has a Residual Functional Capacity (RFC) to perform work with her limitations and can return to her previous work with that RFC; and (5) can perform any other work existing in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).

2. As the ALJ acknowledged, Reese's limitations are evaluated by assessing the combination of her physical and mental impairments.

3. The Commissioner claims Horwitz' findings constituted a mere checkmark form and were not adequately explained. *See* Def.'s Response (doc. 12) at 4. To the contrary, Horwitz submitted an eight-page report, featuring a six-page narrative highlighting Reese's medical history, impressions from her personal observations of Reese, examples of Reese's limitations in various areas of functioning, a medical diagnosis, and a prognosis. R. at 272–79. Mark Hite, Ed. D., meanwhile, submitted a similar form without examining Reese and supported his claims with approximately one page of analysis, most of which criticized Horwitz' assessment. *Id.* at 295–96.

4. Both Horwitz' and Hite's evaluations were performed in 2009—more than two years before the ALJ's decision. This timing is significant because Hite, who discounted Reese's limitations as exaggerated, did not review her 2010 and 2011 treatment records that further chronicled Reese's quest for mental health relief.

coworkers and supervisors. *Id.* at 17–19. Even with such limitations, a vocational expert determined, Reese could perform jobs existing in significant numbers in the national economy. *Id.* at 62–65.

The Appeals Council denied review on October 2, 2012. *Id.* at 1–5.

### FACTUAL HISTORY

Reese, age 42 at the time of the ALJ hearing, has a ninth-grade education and has been homeless at various times since age 14. *Id.* at 169, 248, 360, 366, 418. She was raped at age 15, and again at age 20 after a severe beating. *Id.* at 250, 369. She has anger and murderous rage toward the second rapist. *Id.* These multiple traumas, combined with her abusive childhood, have made her suicidal, severely depressed, and dependent on medication for her mental illness. *Id.* at 273–74. Her only child, a 16–year–old daughter, is being raised by a family friend. *Id.* at 274.

In 2009, Reese was prescribed anti-inflammatory drugs for back pain and Xanex for anxiety. *Id.* at 405. By mid–2011, she also began taking an opiod analgesic and two muscle relaxants. *Id.* at 396. Her treating psychiatrist has prescribed two anti-psychotic medications, Haldol and Seraquel, along with two anti-depressants, Trazadone and Zoloft. *Id.* at 354–55, 428–36. Despite these medications, Reese continues to hear voices, *id.* at 250, 367, 374, and suffer from nightmares, *id.* at 250, 360, and loss of appetite, *id.* at 323, 358, 388.

Although she successfully completed drug treatment, Reese has consistently received mental health treatment. *Id.* at 15, 470. For example, she was regularly treated at the Quality Community Health Care Behavioral Health Service Department from 2009 through 2011. *Id.* at 356–448. Her condition varied, but featured counseling for depression and stress related to her childhood trauma and abusive

living circumstances. *See, e.g., id.* at 356–60 (July 6, 2009 intake form). On August 24, 2010, she reported nightmares about her second rape, *id.* at 368, and on February 15, 2011, she reported hearing voices, *id.* at 425. Although Dr. Lewis Merklin noted on February 5, 2011 that Reese was doing well with anti-depressant prescriptions, he acknowledged Reese continued to hear voices. *Id.* at 435.

At the ALJ hearing, Reese described her daily living activities, which essentially tracked her reports to mental health professionals. For example, she said she spends her days watching television, does not socialize, except for infrequent family visits. *Id.* at 41–48. In addition, she reported seven or eight suicide attempts, crying daily, hallucinations, and paranoia on public transportation. *Id.* at 48–52.

### DISCUSSION

■ A claimant is disabled if she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 416.905; *see also Diaz v. Comm'r of Soc. Sec.,* 577 F.3d 500, 503 (3d Cir.2009). In reviewing an ALJ's disability determination, I must accept all the ALJ's fact findings if supported by substantial evidence or such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 359 (3d Cir.2011). However, with respect to the ALJ's legal conclusions and application of legal principles, I must conduct a plenary

review. *Payton v. Barnhart,* 416 F.Supp.2d 385, 387 (E.D.Pa.2006). Thus, I can overturn an ALJ's decision for a legal error even if I find it was supported by substantial evidence. *Id.*

■ Reese argues the ALJ erred in rejecting Horwitz's assessment and crediting Hite's opinion in concluding she could perform sedentary work despite her physical and mental limitations.

Opinions from an examining non-treating source, such as Horwitz, are generally entitled to significant weight.[5] 20 C.F.R. § 416.927(d)(1); *see Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2011). They are not entitled to as much weight as a treating source's opinions, but warrant more weight than the opinion of a non-treating and non-examining medical source, such as Hite. 20 C.F.R. § 416.927(d)(1); *see also Brownawell v. Comm'r of Soc. Sec.,* 554 F.3d 352, 357 (3d Cir.2008). Testimony from a non-examining source also must be considered by the ALJ, but is not entitled to deference.[6] 20 C.F.R. § 416.927(f); SSR 96–6p, 1996 WL 374180 at *2.

The ALJ concluded Horwitz's opinion was not supported by significant rationale, and was inconsistent with the medical evidence and Reese's daily activities. The ALJ erred by crediting Hite's medical assessment—made without the benefit of examining Reese—and by disregarding

Horwitz' opinion as inconsistent with the medical evidence.[7]

Horwitz's opinion illustrates the importance of judicial deference to a psychologist who observes a patient, as opposed to merely reviewing a patient's medical file. The initial page of Horwitz's report vividly captures Reese's issues: What was most striking about Miss Reese was how unhappy she appeared. She had a hard look on her face. She appeared expressionless and this was quite off putting. R. at 272. Horwitz then interviewed Reese in detail and reviewed her medical history. With respect to social functioning, Horwitz said Reese was emotionally detached and had an almost angry expression on her face in relation to the evaluator. *Id.* at 276. This observation, combined with Reese's significant paranoid ideation in relation to others, led Horwitz to conclude that it is clear that [Reese] would not be able to relate appropriately with others in any setting. *Id.* Horwitz's finding is consistent with Reese's extensive treatment for depression, anger, and trauma, and is supported by Reese's history of multiple medications for mental illness prescribed by multiple treating physicians. *Id.* at 375 (Dr. Merklin); 442 (Dr. Brown); 412–13 (prescription medication log).

Rather than relying merely on Reese's subjective self-reports, as the Commissioner suggests, Horwitz conducted a clinical evaluation of her patient, and crafted a

---

5. Non-treating sources are usually doctors who have examined the claimant, but not in the context of an ongoing treatment relationship. 20 C.F.R. § 416.902. A source is non-treating if a claimant visits him solely to obtain a report for her claim. *Id.* Here, the state agency, not Reese, retained Horwitz to evaluate Reese's disability claim. R. at 15.

6. A non-examining source is an acceptable medical source who has not examined the claimant, but who provides a medical opinion of the case. 20 C.F.R. § 416.902.

7. In a puzzling reference, the ALJ noted Reese had not performed substantial gainful activities for more than 15 years and commented that this raises issues as to whether the current unemployment is truly the result of medical conditions. R. 19. This observation was never explained and appears at odds with the ALJ's acknowledgement of Reese's severe physical and mental impairments.

comprehensive diagnosis based on Reese's statements, the medical record, and Horwitz' professional observations. To suggest, as Hite and the ALJ did, that the totality of the evidence undermines Reese's subjective complaints, defies the essence of the patient-psychologist relationship: a one-on-one exchange to identify and treat mental illness. Adopting the ALJ's rationale that Horwitz's methodology was somehow inadequate would relegate psychological assessments to a computer program.

Moreover, in discussing Reese's ability to concentrate, Horwitz cited Reese's poor performance during the examination to justify his finding that someone with her level of anxiety and depression would be unable to sustain focused attention to tasks in any consistent manner. *Id.* at 277. The ALJ rejected Horwitz's first-hand assessment on the theory that Reese's memory and attention were intact and controlled by medication as shown by Reese's 2009–11 mental health treatment notes. *Id.* at 16; *see also id.* at 352–92.

Those treatment notes, however, portray mental health professionals attempting to regulate medication to assist a suicidal woman grappling with the horror of multiple rapes and the sudden reappearance of the second rapist in her neighborhood. *See, e.g., id.* at 367 (deeply troubled by presence of rapist seen in neighborhood; hears voices telling her to harm the rapist; needs coping skills for anger and frustration); 368 (inconsistent compliance with treatment; suffering nightmares and is consumed with revenge against rapist); 369 (needs plan for desensitization for public settings; increased anxiety about going out in public); 388 (poor eating and sleeping amplify stress and depression); 374,

377, 383, 386, 387 (adjusting dosage and type of prescription medication). Although some passages note Reese was adjusting well to the medication, *see, e.g., id.* at 381, the notes fail to establish, as the ALJ and Hite found, that Reese's subjective complaints and Horwitz' assessment were exaggerated. To the contrary, the notes corroborate Reese's consistent reports of mental illness that required ongoing treatment.[8] At best, the notes justify an inference that Reese's medication finally was regulated to control some of her symptoms.

Similarly, the ALJ failed to properly consider Reese's Global Assessment of Functioning (GAF) scores, totaling between 35 and 50 on three separate dates. Graded on a score of 1 to 100, the scores are a clinical measure of a person's ability to function on a particular day. *See Diagnostic and Statistical Manual of Mental Disorders IVTR* (4th ed. Am. Psychiatric Assoc. 2000), at 32–34. Although Reese received a score of 45, which indicates serious impairment in social or occupational functioning, *id.* at 34, the ALJ concluded nothing in the report ... supports such a low GAF. R. at 15. This conclusion ignores the record.

The GAF score was issued in July 2009 when Reese first sought mental health treatment. *Id.* at 365. She appeared at the clinic crying and reporting depression, poor appetite, poor sleep, chronic pain, and isolation based on rape trauma and homelessness. *Id.* at 360. She was deemed to require a psychiatric consult, medication evaluation and individual weekly therapy to address PTSD and depression. *Id.* Such evidence is more than sufficient to justify the contested GAF score.

---

**8.** Contrary to the ALJ's conclusion, Reese's reports to mental health providers also were consistent with her hearing testimony. *Compare* R. 48 (hearing testimony concerning paranoia and hearing voices on bus) *with id.* at 369 (treatment notes on anxiety in public places); 367 (hearing voices).

Accordingly, the ALJ failed to provide adequate reasons for rejecting Horwitz' opinion.[9] *See Dorf v. Bowen,* 794 F.2d 896, 901–02 (3d Cir.1986) (ALJ erred in relying on non-examining physician's opinion rather than treating physician when physician's examination records supported claimant's claims of pain).

I make the following:

## RECOMMENDATION

AND NOW, on May 3, 2013, it is respectfully recommended that Reese's request for review be GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this Report and Recommendation. The Commissioner may file objections to this Report and Recommendation within 14 days after receiving a copy thereof. *See* Fed.R.Civ.P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. *See Leyva v. Williams,* 504 F.3d 357, 364 (3d Cir.2007).

---

9. Reese argues the record is fully developed and she is entitled to an award of benefits. *See* Pl.'s Br. at 30. Nevertheless, she recognizes remand also would be appropriate for a fair consideration of all of the evidence. *Id.* I agree.

For example, Reese challenges whether she satisfies the Listing of Impairments, *see* Appendix 1, Subpart P, Part 404 of 20 C.F.R., and whether the vocational expert was pre-sented with a sufficient hypothetical question concerning her limitations. Both issues should be re-examined by the ALJ on remand consistent with this opinion. *See Podedworny v. Harris,* 745 F.2d 210, 222 (3d Cir.1984) (award of benefits should be made only when substantial evidence in the record as a whole indicated that the claimant is disabled and entitled to benefits).